**DAVIS v. THOMPSON et al.**

No. 9192—Opinion Filed Nov. 26, 1918.

Rehearing Denied Jan. 21, 1919.

(177 Pac. 67.)

(Syllabus.)

**1. Indians—Five Civilized Tribes—Enrollment Records on Age.**

"The enrollment records of the Commission of the Five Civilized Tribes," which

section 3 of the act of Congress approved May 27, 1908 (35 Stat. 312, c. 199), declares "shall hereafter be conclusive evidence as to the age" of any enrolled citizen or freedman of said tribes, embrace and include all of the testimony and exhibits tending to establish age that were in evidence before the Commission, and the conclusions of the Commission, based thereon, from the date of the application for enrollment of any particular allottee up to the time of the ascertainment by the Commission as to whether the name of such allottee was entitled to be placed upon the roll of the nation in which he claimed citizenship.

**2. Same.**

The entire enrollment record, and not any particuar part thereof, is, by the act of Congress of May 27, 1908 (35 Stat. 312, c. 199), made conclusive as to age in determining question arising under the act.

**3. Same.**

The enrollment records of the Commission to the Five Civilized Tribes pertaining to the age of Etha Hutton, Creek freedman, roll No. 4135, examined, and held, that on April 25, 1910, she was, according thereto, over the age of 18 years.

Error from District Court, Okmulgee County; R. P. De Graffenried, Judge.

Action by Etha Davis, nee Hutton, against Alice R. Thompson and another. Judgment for defendants, and plaintiff brings error. Affirmed.

E. J. Van Court, for plaintiff in error.

Wm. M. Matthews, Geo. S. Ramsey, Edgar A. De Meules, Malcolm E. Rosser, Villard Martin, and J. Berry King, for defendants in error.

RAINEY, J. Etha Davis, nee Hutton, instituted this action against J. S. Hopping and Alice Thompson to recover the possession of, and to quiet the title to, a tract of land situated in Okmulgee county, Okla., which was allotted to her as a Creek freedman. The cause was tried to the court without a jury and resulted in a judgment for defendants, to reverse which this proceeding in error was commenced. Hereinafter, for convenience. Etha Davis, where she is designated by name, will be called by her maiden name, Etha Hutton, and where not referred to by name will be denominated plaintiff, and the other parties to the action will be denominated defendants.

The record in this case shows that on September 27, 1905, Dock Hutton, in company with his wife, Lula Hutton, his son, Lewis Hutton, and his daughter, Laura Hutton, went to the office of J. S. Hopping, in

Okmulgee, Okla., and offered to sell to him a part of the allotment of Etha Hutton, which is the land in controversy. Mr. Hopping was acquainted with Dock and Lewis Hutton, but was not acquainted with Etha, and the Huttons present pointed out and represented Laura as Etha. Mr. Hopping entered into negotiations with them for the purchase of the land, and a price of $1,200 was agreed upon. Laura Hutton signed the deed as Etha Hutton, and acknowledged the same before Mr. A. D. Kennedy, a notary public. One thousand dollars of the purchase price was paid at the time, and $200 was withheld until the abstract could be completed. Finding upon investigation that the records of the Dawes Commission at Muskogee showed Etha Hutton to be under age at the time the deed was excuted, Mr. Hopping sent for Mr. J. C. Stone, his attorney, who was present when the deed was signed, and he and Mr. Stone proceeded to take the affidavits of the Hutton family as to the age of Etha Hutton. These affidavits showed her to be of age at the time of the execution of the deed. Laura made one of the affidavits, appearing before Mr. Stone and representing herself as Etha. Mr. Stone and Mr. Hopping were both grossly imposed upon, and Mr. Stone testified that he was so outraged he threw his notary seal away and has never since acted as a notary public. Relying upon the affidavits, Mr. Hopping paid the $200, the balance of the purchase price; but he subsequently learned that the deed was a forgery, and after the passage of the act of May 27, 1908 thinking that she was possibly 18 years of age at that time, sent one Ellis Gentry to Etha Hutton and procured a deed from her on September 23rd of that year. Neither of these deeds is relied upon by the defendants.

On April 10, 1910, the plaintiff, by her next friend, A. R. Hicks, instituted suit in the district court of Okmulgee county to recover the land in controversy and to have the title thereto quieted in her. She was represented in that case by E. H. Kuykendall and F. L. Montgomery, attorneys of Muskogee, Okla., who had a contract with her fixing a lien on the land involved for their fee. While this suit, which was case No. 1621 in said court, was pending, and on April 25, 1910, Mr. Hopping, on the advice of his attorney, went to Eufaula, Okla., where he met Etha Hutton and her mother, and made a deal with Etha whereby he secured another deed from her to the same tract of land for $500, which he paid at the time, and released a lien he had taken on the land of Dock Hutton and Laura Hutton to secure him for the $1,200 fraudu-

lently taken from him through the instrumentality of the forged deed. The attorneys for Etha Hutton, when they learned that Etha had executed the deed of April 25, 1910, claimed that on account of their contract they were entitled to receive the same amount of money that Etha Hutton was paid, and, after some controversy, Mr. Hopping finally agreed to and did pay them $500, but insisted that he should have a new deed from Etha Hutton, which was executed by her on September 7, 1910. On the advice of Mr. Stone, Mr. Hopping also paid Etha Hutton $100 as a new and independent consideration at the time this last deed was executed. Under the agreement with the attorneys a stipulation was filed that judgment should be rendered in the cause then pending in favor of Mr. Hopping and Mrs. Alice Thompson, defendants therein. This judgment was rendered in May, 1911.

In the instant action the court found the issues generally in favor of defendants, and in the judgment rendered it was also specifically found that the action heretofore referred to, filed by the plaintiff against the defendants and others, was res adjudicata as to the validity of the deeds involved in this action, and the court further found that Etha Hutton executed the deed of April 25, 1910, for a valuable consideration, and that she also executed the deed of September 7, 1910, for a valuable consideration. The judgment also recited that Etha Hutton was over 18 years of age on the date of the execution of deed of September 7, 1910.

In the case at bar plaintiff claims that she was a minor on the dates of the purported execution of the several deeds hereinbefore mentioned, and for that reason each and all of them are void, and that the judgment rendered against her in case No. 1621 is void for a number of reasons unnecessary to here mention. In her petition she alleges that she executed the deed of September 7, 1910, but that she received no consideration therefor, and that the same was procured by fraud and duress; that the deed of September 27, 1905, is a forgery; that the deed of September 23, 1908, is a forgery; and that the deed of April 25, 1910, is also a forgery. She testified in her own behalf that she did not execute any deed to her land prior to September 7, 1910; that she had only signed one deed to her land, and that was executed in 1910, to Mr. Hopping; and that she did not receive any consideration for the execution of said deed. With reference to the circumstances under which the deed that she admits she signed was executed, she testified that one

Ellis Gentry, as agent for Mr. Hopping, came to her home and represented to her that if she would sign the deed that they would "turn papa loose"; that at said time they (the defendants) had a writ out for her father. Her testimony, then, is at variance with the allegations in her pleadings, for the latter she alleges that all the deeds in evidence, except the deed of September 7, 1910, are forgeries, while in her testimony she specifically admits the execution of the deed procured by Gentry, and the other evidence in the case shows beyond any doubt that the deed taken by Gentry was executed by her in September, 1908.

It is contended by her attorney that the proof shows that she executed the deed of April 25, 1910, instead of the deed of September 7, 1910, as alleged in her petition; but this she specifically denies, because she states she only executed one deed, and that was the one taken by Gentry. However, other testimony in the case clearly shows that she did execute the deed of April 25, 1910, and received therefor $500. Counsel endeavor to explain this inconsistency by saying that plaintiff was mistaken when she admitted in her pleadings that she had executed the deed of September 7, 1910, and contend that the evidence shows that this deed was a forgery, and it is further contended that, although the evidence shows that the deed of April 25, 1910, was executed by plaintiff, it further shows said deed was without consideration and was procured by fraud and duress. Lulu Hutton, mother of plaintiff, testified to certain alleged facts, which, if true, would tend to prove that the deed of April 25, 1910, was procured by fraud and duress; but the great weight of the evidence in the record clearly rebuts her testimony, and shows, as found by the trial court, that it was executed for a valuable consideration. The evidence also clearly shows, as found by the trial court, that plaintiff executed the deed of September 7, 1910. We have very carefully read every word of the evidence in the record, and are convinced that Etha Hutton executed all the deeds above referred to, except the one executed September 27, 1905, and that the deeds of April 25, 1910, and of September 7, 1910, were each executed for a valuable consideration, and without fraud or duress, as found by the trial court.

At the times the two last named deeds were executed, which was subsequent to the taking effect of the act of Congress of May 27, 1908 (35 Stat. 312, c. 199), there were no restrictions against the voluntary alienation of the surplus allotments of adult Creek freedmen. So the remaining and decisive

question to be considered and determined is: Was Etha Hutton 18 years of age on either April 25, 1910, or September 7, 1910? In the determination of the right of Creek freedmen to alienate their surplus allotments after the taking effect of the act of May 27, 1908, supra, the enrollment records of the Commission to the Five Civilized Tribes are conclusive evidence as to the age of such allottees, and such records embrace and include all the testimony and exhibits tending to establish age that were in evidence before the Commission, and the conclusion of the Commission based thereon, from the date of application for enrollment of any particular allottee up to the time of the ascertainment by the Commission as to whether the name of such allottee was entitled to be placed upon the rolls of the nation in which he or she claimed citizenship. Scott v. Brakel, 43 Okla. 655, 143 Pac. 510.

The complete enrollment record introduced in evidence in this case by the plaintiff consists of a census card of the allottee, Etha Hutton, the application made by her grandfather, Joe Hutton, for the enrollment of his family, answer of the Creek Nation, contesting their right to enrollment, and copy of that part of the Creek freedman roll relating to the said Etha Hutton. The application for enrollment was filed September 5, 1896, and the name of Etha Hutton appears in a list of eighteen children and grandchildren of Joe Hutton under the heading "Enrollment of the Family," and which purports to set out opposite each name the age and family relationship to Joe Hutton of the persons whose names appear on the roll. The entry as to Etha is as follows:

Enrollment of the Family.

| Name. | Age. | Relationship |
|-------|------|--------------|
| Etha Hutton. | 2 | Granddaughter |

The census showing the names, roll numbers, relation to person first named, age, and sex of those appearing on the card, including Etha Hutton, is as follows:

Residence: ——— Town.
Post Office, Eufaula.        Creek Nation.
Blank 705—10, 2—14—2M.

| Dawes Roll | No. | Name. | Relationship to Person First Named. | Age | Sex |
|-----|-----|-------|--------------------------|-----|-----|
| 4133 | 1 | Hutton, Dock | | 39 | M. |
| 4134 | 2 | " Jane | Dau. | 17 | F. |
| 4135 | 3 | " Etha | " | 6 | " |
| 4136 | 4 | " Paul | Son | 4 | M. |
| 4137 | 5 | " Julia Louisa | Dau. | 1 | F. |

Below and a little to the right of the names on the card are the following words and figures:

"Admitted by Dawes Commission Case No. 70. Nos. 1-2-3-4 admitted to citizenship by Dawes Commission in 1896 and no appeal taken (Case No. 70) No. 4135-6 and 7 hereon full sisters of No. 1 on N. F. 548."

At the lower right-hand corner of the card is the following:

'Date of Application for Enrollment, Sep-1898."

It is not claimed, and we do not think, any of the other data on the census card throw any light on the question of the allottee's age, and we therefore do not incorporate the census card in full in this opinion.

Counsel for plaintiff say that this enrollment record fixes the age of Etha Hutton at 2 years on September 5, 1896, and that she was therefore under the age of 18 years on April 15, 1910, and on September 7, 1910. The gist of his contention is thus stated in his brief:

"Taking the enrollment record as a whole, including the census card, this is the only certain data (age given in application for enrollment) from which the age of plaintiff can be reckoned; take any other starting point, and we are at once involved in guesswork and conjecture. The census card shows her age to have been 6 years, but at some time which, as we shall see, is impossible to fix by the card. * * *"

That part of the enrollment record consisting of the application for enrollment indicates that Etha Hutton was 2 years old on September 5, 1896. What does the census card show as to her age? We agree with counsel for plaintiff that the notation, "Date of Application for Enrollment Sept. 1898," on the lower right-hand corner of the card, does not have reference to the date of application or date of enrollment of Etha Hutton, for the application for enrollment and the census card in evidence show that the application was made for her enrollment and that she was enrolled in 1896. As suggested by plaintiff's counsel, the date probably has reference to the date of application for enrollment of Julia Louisa, if it has reference to any one. She is the only one on the card to whom it could apply, and it has no probative effect in determining the age of Etha Hutton. It will be noted that she is No. 3 on the card, and that Nos. 1, 2, 3, and 4 were admitted to citizenship by the Dawes Commission in 1896, and no appeal was taken from the decision of the Commission. Her age is given as 6 years.

In all the reported cases it is assumed, and we think correctly, that the age shown

on the census card is the age of the allottee as found by the Commission at the time of the enrollment, or the application for the enrollment, of the allottee. We have found no case to the contrary, and, in view of the manner in which the census cards were made and compiled, this question seems free of doubt. In the case of Scott v. Brakel, supra, Mr. Justice Kane, who delivered the opinion of the court, very interestingly discusses the procedure adopted and followed by the Commission in the enrollment of the citizens of the Five Civilized Tribes. We quote from the opinion:

"Under the procedure directed by the Interior Department, the Dawes Commission required each person applying to be enrolled as a citizen of the Five Civilized Tribes to make a statement under oath as to his age, sex, degree of blood, family relationship, etc., which statements were reduced to writing in the present census card form at the time of the examination, and became the record in reference to the enrollment of each individual applicant. * * * In many instances the census card consists of an entry of a summary of the evidence of the applicant at the time the application was made, whilst in other instances, where the testimony of the applicant was not taken down by a stenographer and subsequently transcribed, the entry consisted of the epitomized statements of the witnesses reduced to census card form. * * * (Emphasis ours.)

From this definition of the census card it necessarily follows that the age shown opposite the name of a citizen is the age of said citizen as found by the Commission at the time of his or her enrollment, and as the year of enrollment of the allottee in question is specifically given on the card as 1896, it follows that the age of Etha Hutton, as shown by that part of the enrollment record consisting of the census card, was 6 years in 1896.

We have, then, two parts of the enrollment record apparently in conflict as to her age. In this situation it was the duty of the trial court, and is now our duty, to examine the entire enrollment record, and, after giving each and every part its due weight, to determine her age from the enrollment record as a whole, and not from a single part thereof. Where such a situation arises each case must be decided on its own merits. This is true, for the reason that in some cases the evidence of witnesses from whom the information contained on the census card was obtained is not preserved in the record, while in others it is. In some cases, as here, there are no birth affidavits, while in others there are.

In Perryman v. Sharp et al., 71 Okla. 242, 176 Pac. 526, decided September 10, 1918, different parts of the enrollment record were in conflict, and we construed the entire record, and found that under the circumstances of that particular case the birth affidavit was a part of the enrollment record, and was entitled to greater weight than the census card in the determination of the age of the citizen there in question. The age of the allottee, as given on the census card, is the conclusion of the Commission, and while the act of May 27, 1908, makes the enrollment record as a whole, and not the decision of the Commission, conclusive as to the age of citizen, from the circumstances surrounding the compilation of these cards, as heretofore referred to, the finding of the Commission as to the age shown thereon is entitled to very great weight. This was recognized in Perryman v. Sharp, supra, and the conclusion of the Commission was set aside in that case, because it was overcome by other parts of the enrollment record, and, as stated in the opinion, was shown to be "palpably erroneous."

While the application for enrollment in the instant case shows Etha Hutton to be of a different age than that found by the Commission, we do not think the statement of her age in the application for enrollment made by her grandfather overcomes the presumption of the correctness of the Commission's findings, or shows that its conclusion was palpably erroneous. Why? In view of the fact, as shown by the enrollment record in evidence, that the application for the enrollment of the Hutton family was resisted, and, further, in the light of the well-known procedure adopted by the Commission, we must presume that the testimony of witnesses was taken at the hearing had by the Commission on the application (although this testimony was not preserved by the Dawes Commission, and is therefore no part of the enrollment record in this case), and that the applicant and his witnesses testified correctly, under oath, at the hearing, as to the ages, sex, relationship, etc., of the applicants, and it seems to us that it is more probable that the ages were given correctly in this examination than in the formal application for enrollment.

We must also bear in mind, as shown by the enrollment record, that the application for the enrollment of Etha Hutton was made by her grandfather, was signed by him by mark, and was not sworn to or verified. Moreover, it appears that in the purported list of his children and grandchildren he gave the ages of all his children as "un-

known." It is highly improbable that he could give the ages of his grandchildren correctly, when he did not even know the ages of his own children. The enrollment record also discloses that Paul Hutton, a full brother of Etha Hutton, and whose age is given on the census card as four years, and who was admitted to citizenship in 1896, does not appear on the roll of the family. That he was omitted from the family roll shows that Joe Hutton either was not sufficiently conversant with the family history, or that he was grossly careless in preparing the application, or in furnishing the data to the party by whom it was prepared. The age of the plaintiff, as given in the application for her enrollment, is not sufficient in our opinion to overcome the presumptive correctness of the Commission's findings. We therefore conclude that the entire enrollment record shows that she had arrived at the age of 6 years when she was enrolled in 1896, which would make her more than 18 years of age on April 25, 1910, when she executed the first deed.

One other assignment of error remains to be considered. There was introduced in evidence by the defendants, over the objection of plaintiff, a purported enrollment record of Etha Hutton. It is claimed that it was not properly certified. As this record is in all material respects identical with the one introduced by plaintiff, it is unnecessary for us to pass on the sufficiency of the certificate.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

All the Justices concur, except OWEN, J., not participating.