### EDMISON et al. v. CRUTSINGER et al.

No. 20557. Opinion Filed July 5, 1933.

Withdrawn, Corrected, Refiled, and Rehearing Denied Oct. 17, 1933.

Carroll, Whipple & Clayton, Ramsey, deMeules, Martin & Logan, G. Earl Shaffer, O. S. Essman, and Sam Payne, Jr., for plaintiffs in error.

Orr & Woodford, Pryor & Stokes, Chas. E.

Bush, and John Rogers, for defendants in error.

RILEY, C. J. This action involves the title to 160 acres of land located in Hughes county, being the S. E. ¼ of section 24, township 9 N., range 8 E. said land having been allotted to Jennie Simon; the southeast 40 is her homestead allotment and the remainder is her surplus allotment. She brings this action to recover the land under the name of Jennie Edmison, nee Simon, but for convenience she will be hereinafter referred to as Jennie Simon.

Jennie Simon was regularly enrolled as a one-eighth blood citizen of the Creek Nation. Her age is one of the principal issues in this case, the question being whether she was born on August 6, 1892, or August 6, 1893.

On July 13, 1907, she executed a warranty deed conveying her surplus allotment to J. F. Smith. On March 2, 1908, she deeded the same land to J. E. Gentry. July 28, 1908, she executed a warranty deed for the entire quarter section to J. B. Cox. August 1, 1908, she executed a quitclaim deed to J. B. Cox covering the entire quarter section. The foregoing conveyances are all conceded to have been made while she was a minor.

On February 17, 1911, she executed a warranty deed conveying the entire quarter section to Alec Melton. On February 23, 1911, she executed a deed conveying the entire quarter section to J. R. Green. May 1, 1911, she executed a warranty deed covering the homestead allotment to J. A. Chapman, and on the same day executed a warranty deed conveying her surplus allotment to C. C. Gafford.

Based upon the above deeds and mesne conveyances, defendants in this action claimed title; but, in addition thereto, she executed a deed dated February 23, 1925, conveying said land to Herman Shepard.

The above deeds, except the last one, are assailed in this action by Jennie Simon and her coplaintiffs, who claim under later conveyances, upon the ground that they were all executed by Jennie Simon while a minor, and without the approval of the county court. As to the deed dated February 23, 1925, it is assailed as being procured by fraud and without any consideration.

Defendants rely upon the grounds: (1) That Jennie Simon reached her majority on or before February 17, 1911, and that the deeds, or, at least, some of them, executed by her between the 17th day of February,

and May 1, 1911, inclusive, were valid and binding, and that thereafter she had no title to convey and could convey none to her coplaintiffs; (2) that the statute of limitations has run as to the deeds so executed before the commencement of this action; and (3) there was no fraud in the procurement of the deed dated February 23, 1925, but alleged to have been actually executed on March 3, 1925.

This action was commenced in the district court of Hughes county on July 2, 1927, in three causes of action. The first is in ejectment; the second is for damages; and the third is for cancellation of the several deeds and conveyances under which defendants claim.

Defendants in their answer admit that they are in possession, and assert that their claim of title is based upon the warranty deed of Jennie Simon to J. R. Green dated February 23, 1911, and the deed of Jennie Simon to James A. Chapman, dated May 1, 1911, and the deed of Jennie Simon to C. C. Gafford, dated May, 1911.

They then plead that they and their predecessors had been in possession of said premises under color of title for more than 15 years prior to the institution of this suit in Hughes county, alleging that they and their grantors and predecessors had been in open, notorious, peaceable, and exclusive possession of the premises since March 2, 1908. They specifically pleaded that they had been in open, notorious, and peaceable possession for a period of more than 15 years from and after the time when Jennie Simon, by the allegations of her petition, admits that she became 18 years of age, viz., August 6, 1911. They plead subdivision 4, section 183, C. O. S. 1921, which provides that an action for the recovery of real estate not otherwise provided in said section must be brought within 15 years after the cause of action accrues. They further plead section 8554, C. O. S. 1921, which provides:

"Occupancy for the period prescribed by Civil Procedure, or any law of this state as sufficient to bar an action for the recovery of the property, confers a title thereto, denominated a title by prescription, which is sufficient against all."

They expressly deny that the deed to Herman Shepard, dated May 23, 1925, was without consideration or was procured by fraud.

By cross-petition defendants allege that Jennie Simon reached her majority and became of lawful age on or before February 17, 1911; they plead the deed of February

17, 1911, from Jennie Simon to Alec Melton, a subsequent deed from Melton to J. R. Green, the warranty deed of Jennie Simon to J. R. Green dated February 23, 1911, the deed of May 1, 1911, from Jennie Simon to J. A. Chapman, the deed of May 1, 1911, to C. C. Gafford and various mesne conveyances by which the record title was passed to defendants; the mesne conveyances being too numerous to set out herein. They also plead the deed of Jennie Simon to Herman Shepard, and plead that they together with their grantors had been in peaceable possession of said premises since February 17, 1911, and plead title by prescription as provided by section 8554, supra. They then plead a number of conveyances from Jennie Simon to her coplaintiffs made subsequent to May 7, 1911, and allege that they constitute clouds upon the title of defendants. They pray for their cancellation and by another cause of action claim $50,000 damages against the plaintiffs.

By reply plaintiffs specifically deny that defendants had been in possession of the premises for more than 15 years before the commencement of this action. They allege that, although defendants may have been in possession for more than 15 years before the commencement of this action, all of which they deny, this action is not barred for the reason that Jennie Simon, then being the owner of the land, commenced an action in the district court of Hughes county on February 24, 1924, for the recovery of said land, which action was dismissed without prejudice March 21, 1925; that on March 31, 1925, Jennie Simon, and the other plaintiffs herein, who had acquired their interests in the premises subsequent to February 24, 1925, commenced another action in the District Court of the United States for the Eastern District of Oklahoma for the recovery of said land, which action they plead was finally dismissed without prejudice on motion of the defendants April 25, 1927; that said action failed otherwise than upon the merits, and that this action was commenced within one year after the dismissal of the latter action.

The cause was tried to a jury, and at the close of plaintiffs' evidence, defendants demurred thereto, which demurrer was sustained and the jury was directed to return a verdict for the defendants. The defendants, apparently at the suggestion of the trial court, abandoned their claim for damages. The trial court in sustaining the demurrer dictated into the record a lecture to the jury containing some 500 words, explaining why it felt compelled to sustain the demurrer. From the whole of what he said, we gather that he sustained the demurrer to the evidence upon the ground that the action was barred by the statute of limitations, and it is indicated he thought there was no evidence of fraud in connection with the deed executed by Jennie Simon to defendant Herman Shepard. Judgment was accordingly rendered for defendants, and plaintiffs appeal.

Three questions are presented: First. Had Jennie Simon attained the age of 18 years on or before May 1, 1911? Second. Was plaintiff's claim barred by the statute of limitations? Third. Whether or not there is any substantial evidence tending to show that the deed from Jennie Simon to Herman Shepard, dated February 23, 1925, was without any consideration and obtained by fraud.

Both sides recognize the binding force of the provisions of section 3 of the Act of Congress of May 27, 1908 (35 St. at L. 312, c. 199), which provides:

"The enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman."

Both sides contend that the enrollment records sustain their respective contentions as to the age of Jennie Simon. Plaintiffs contend that such records conclusively show that Jennie Simon was born August 6, 1893, and therefore did not become 18 years of age until August 6, 1911. Defendants contend that the enrollment records conclusively show that Jennie Simon was seven years old February 7, 1900, and became 18 years of age on or before February 17, 1911, and was therefore competent to convey the land at any time after February 17, 1911.

It becomes necessary to examine the entire enrollment record. This has been held to include and embrace all of the testimony and exhibits tending to establish age that were in evidence before the Dawes Commission, and the conclusions of the Commission based thereon from the date of the application for enrollment of any particular individual up to the time of ascertainment by the Commission as to whether the name of such person was to be included upon the final rolls in which he claimed citizenship. Scott v. Brakell, 43 Okla. 655, 143 P. 510. In this case certified copies of the records were introduced in evidence, including old field card No. 2932. It shows the head of

the family of which Jennie Simon was a member to be Robert Simon, a one-fourth blood Creek. The family number was 504. It shows the members of the family at that time and their ages, sex, blood, and relationship to Robert Simon as follows:

"Robert Simon    Age 23 M.    ¼ blood

"Jennie, dau.—Age 5 F. ⅛ blood.

"Lena, dau.—Age 2 F. ⅛ blood."

Thereon is the following notation:

"Robert is a son of Caesar and Chanty Simon—Chanty was a half-blood Creek-Caesar Simon a Seminole."

Also the following notations:

"Robert and Lena, transferred to new Creek Card 1652."

"Jenny transferred to new Creek Card 1652."

There is nothing in the record showing when the old card was made. But from the record as a whole it conclusively appears that it must have been made not later than July 17, 1899. Otherwise the name of Granville Simon, a son of Robert Simon, shown by the record to have been 7 months old February 17, 1900, would have appeared thereon. It could not have been made earlier than February 18, 1898, otherwise the daughter Lena, who is shown as two years old thereon, would have been more than three years old on February 17, 1900, the date of the application for enrollment. There is nothing to show when the entry was made showing the transfer of Robert and Lena to the new card No. 1652. There is nothing to show when the entry of the transfer of Jennie to the new card was made. But Jennie must have been transferred at some time other than that when Robert and Lena were transferred; otherwise but one entry would have been made. This is of some significance in view of the contention made that when the application for enrollment of Robert Simon, Lena Simon, and Granville Simon was made, which is conceded to have been on February 17, 1900, the name of Jennie Simon was not mentioned. Photostatic copies of other parts of the enrollment record were introduced in evidence and show:

"Post-Office:    Wewoka, Ind. Terr.    Creek Nation
————————Roll.

"Card No. 1648
"Field No. 1652

| "Dawes Roll No. | Name | Relationship to person first named. | Age | Sex | Blood. |
|---|---|---|---|---|---|
| "5311 1. | Simon, | Robert | 25 | M. | ¼ |
| "5312 2. | " , | Lena    Dau. | 3 | F. | ⅛ |
| "5313 3. | " ; | Granville  Son | 7 mos. | M. | ⅛ |
| "5314 4. | " , | Jennie   Dau. | 7 | F. | ⅛ |

(Continued from above)"

On the lower right-hand corner of the card appears the following notation:

"Date of application for enrollment Feb. 17, 1900."

Then follows tribal enrollment as to parents showing father of Robert Simon, etc., thereafter the following:

"No. 1 on 1890 Roll as Robt. Simon,
"No. 1 Tuckabatchee Pay Roll of 1895
"Enrollment
"Of Nos. 5311-5314 in. Hereon
"Approved by the Secretary of
"Interior March 28, 1902.
"Citizp. Cert.
"Issued for Nos. 1, 2, and 3
   "(N. B. No. 78 for No. 3)
"Feby. 19th, 1900.
"Citizp. Cert.
"Issued for No. 4,
"May 23, 1901."

The enrollment record also shows the following birth affidavits:

"Department of the Interior.

"Commission to the Five Civilized Tribes.

"In re Application for Enrollment, as a citizen of the Creek Nation, of Jennie Simon, born on the 6th day of August, 1893.

"Name of Father: Robert Simon, a citizen of the Creek Nation.

"Name of Mother: Mariah Simon, a citizen of the U. S.

"Post Office:   Wewoka, I. T.
"Affidavit of Mother.

"United States of America,
"Indian Territory.
"Northern District.

"I, Mariah Simon, on oath state that I am 31 years of age and a citizen, by parents of the U. S.; that I am the lawful wife of Robert Simon who is a citizen, by mother of the Creek Nation; that a female child was born to me on the 6th day of August, 1893: that said child has been named Jennie Simon, and is now living.

"Maria Simon.

"Subscribed and sworn to before me this 15th day of March, 1900.

"C. D. Long,
"Notary Public.

"Affidavit of Attending Physician, or Midwife.

"United States of America.
"Indian Territory,
"Northern District.

"I, Mary Simon, a midwife, on oath, state that I attended Mrs. Mariah Simon, wife of Robert Simon on the 6th day of August,

1893, that there was born to her on said date a female child; that said child is now living and is said to have been named Jennie Simon

"Mary Simon <span>Her X mark</span>

"Subscribed and sworn to before me this 12th day of March, 1900.

"C. D. Long,
"Notary Public.

"Witnesses:
"C. D. Long,
"S. T. Wiggins,
"E. Parker."

Then appears the following:

"(Stub)
"47                                          Cr. 1652
"Cr. Roll In Re 5311

"Application for Enrollment of
"Infant Child
"Jennie Simon
"As a citizen of the Creek Nation
"Approved March 14, 1900.
"(Name nonlegible)
"Acting Chairman
"Commissioner.

"Deed (Died) prior to April (Nonlegible)
"Department of the Interior.

"Commissioner to the Five Civilized Tribes
"Filed Jany. 3, 1901
"7/18/03                    (Name, nonlegible)
"This child appears to have been living May 24, 1901. See testimony in Allotment."

And:

"Creek Roll, Indians by Blood.
Card

"No.        Name        Age Sex Blood    No.
"5314  Simon, Jennie    7    F    ⅛    1648."

These were certified to February 12, 1925, as being true and correct copies of the entire enrollment record in connection with the application of Jennie Simon, Roll No. 5314, for enrollment as a citizen of the Creek Nation, and as being census card 1648, old card 2932, birth certificates and a copy of approved Roll No. 5314.

Photostatic copies of part of the same records showing certain notations made thereon on February 25, 1925, relative to the date of application for enrollment and the date of birth of Jennie Simon were introduced in evidence. But these notations, having been made long after the date of ascertainment of the eligibility of Jennie Simon for enrollment, were incompetent and should have been excluded.

There was no evidence taken at the time of the application for enrollment of Robert Simon. If so, it was not preserved.

It will thus be seen that if the notation in the lower right-hand corner: "Date of application for enrollment, February 17, 1900," means that this is the date of application for enrollment of Jennie Simon and the entry opposite the number 5314, "Jenny Dau. 7 F. ⅛," was made on that date, there is a direct conflict between the record thus made and the birth affidavits made and filed thereafter. For if the birth affidavits speak the truth, Jennie could not have been seven years old on February 17, 1900.

Where a notation such as here shows the date of application for enrollment of a particular individual and the age of such individual is shown on the enrollment record in years only, and the record contains nothing more relative to the age of such applicant, it has generally been held that such record is conclusive evidence that such applicant had arrived at the age stated at some period within one year next preceding the date stated in the notation, but is not conclusive as to the date of birth. Harris v. Allen, 78 Okla. 66, 188 P. 878, citing: McDaniel v. Holland, 230 Fed. 945; Jordan v. Jordan, 62 Okla. 171, 162 P. 758; Heffner v. Harmon, 60 Okla. 153, 159 P. 650; Hart v. West, 62 Okla. 71, 161 P. 534.

But a different situation arises when parts of the enrollment record are in direct conflict therewith as to the age of the applicant. Then the whole record up to the date of ascertainment by the Commission of eligibility for enrollment must be considered.

In cases where there were more than one member of a family to be enrolled, the notation of the date of application for enrollment does not necessarily apply to all the members of the family, and whether or not it does apply to any particular member of the family may be determined from other facts appearing on the enrollment record as a whole. Davis v. Thompson, 72 Okla. 25, 177 P. 67.

The birth affidavits are a part of the enrollment record and must be considered with all the statements or conclusions of the Commission as to the age of the applicant made elsewhere in the record, together with all the circumstances shown by the record itself.

In Perryman v. Sharp, 71 Okla. 242, 176 P. 526, it is said:

"It is quite clear to us that the birth affidavit is a part of the enrollment record as defined in Scott v. Brakel [43 Okla. 655, 143 P. 510], supra."

If we are to look only to the enrollment records to ascertain the age of Jennie Simon, the apparent conflict thus shown must be reconciled if possible. This may be done without difficulty. The plaintiffs contend that the name of Jennie Simon was not included at the time the application for enrollment of Robert, Lena, and Granville Simon was made, and that the notation showing the date of the application of enrollment to be February 17, 1900, refers only to the application of Robert, Lena, and Granville. This contention is clearly borne out by the record. The general plan and custom of enrollment was that in enrolling a citizen and his family, if he had a family, the head of the family was entered first, and he was given a "Dawes Roll" number and was numbered No. 1 of the family under the heading "Name." Then follows in the same line the age, then the sex, then the quantum of Indian blood, either whole or the part stated in fraction, as the case may be. Then follow the children of such person according to age, the oldest appearing as No. 2, together with the relationship to the first person named, such as son or daughter, then the age, then the sex, then the quantum of Indian blood, and so on until all the children were included, each being numbered consecutively, and each being given a separate "Dawes Roll" number.

In the instant case Robert Simon was No. 1, then follows No. 2, Lena, daughter, age 3; then Granville, son, age 7 months; and lastly appears Jenny, daughter, age 7.

Contrary to the general custom the oldest child appears last. The photostatic copy of the record clearly shows the names of Nos. 1, 2, and 3, and their relationship, ages, etc., all to be written in the same handwriting and with the same pen the date February 17, 1900, in the notation in the lower right-hand corner, is written. The words "date of application" for enrollment appear to have been stamped with a rubber stamp.

The name "Jenny" and all data following her name appear clearly to have been written in a different handwriting and with a different pen.

At the lower left-hand corner of the card appears the notation that citizenship certificate was issued for Nos. 1, 2, and 3, February 19, 1900, only two days after the date noted as the date of application for enrollment. Below that appears the notation that citizenship certificate was issued for No. 4 May 23, 1901. The only thing written in

ink in the latter notation is the figure 4, but it appears to have been written with the same pen as the word "Jenny," and all the words following in the same line opposite her number on the record. If Jennie was born August 6, 1893, as stated in the birth affidavits, then on May 23, 1901, the date her citizenship certificate was issued, she would have been seven years, nine months, and 17 days old.

Had the proof been made on February 17, 1900, that Jennie was then living and was then seven years old, and that she was the daughter of Robert Simon, there appears to be no reason why her name would not have been entered on the roll next after that of her father, she being the oldest child and the next member of the family entitled to be enrolled, her mother being a noncitizen. Furthermore, there would have been no occasion for delaying the issuance of the citizenship certificate for her until May 23, 1901, more than one year and three months after certificates were issued for her father, sister, and brother. The proof of her birth, and the fact that she was living notwithstanding a notation was made on the record at some time that she had died prior to April 1, 1899, appears to have been filed January 3, 1901, though the affidavits were made in March, 1900. Her name and age must have been entered on the roll after this date, and probably on May 23, 1901, when her certificate of citizenship was issued. If so, her age was entered in harmony with the facts stated in the birth affidavits, and this eliminates the apparent conflict as to her age. This would also eliminate the apparent conflict in the difference between the ages of Lena and Jennie, which is shown on the old field card to be three years, and on the final roll there appears to be a difference in their ages of four years.

From the record as a whole, we are forced to the conclusion that the correct date of the birth of Jennie Simon was August 6, 1893, and that she had not arrived at the age of 18 years prior to August 6, 1911, and that all deeds executed by her prior to August 6, 1911, were executed while she was a minor.

We must then consider the question of the statute of limitations.

Defendants strenuously contend that if it be conceded that Jennie Simon did not become 18 years of age until August 6, 1911, still this action, not having been commenced

until July 2, 1927, is barred by the 15 years statute of limitations for the reason that 15 years after she obtained her majority had run on August 6, 1926. Except for the action commenced in the United States District Court for the Eastern District of Oklahoma on March 31, 1925, and dismissed on motion of defendants February 21, or, at latest, April 25, 1927, the statute had clearly run unless the date when the defendant took possession would govern.

Plaintiffs rely upon the provisions of section 190, C. O. S. 1921, which provides:

"If any action be commenced within due time, and a judgment thereon for the plaintiff be reversed, or if the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff, or, if he die, and the cause of action survive, his representatives, may commence a new action within one year after the reversal or failure."

In their reply plaintiffs pleaded and the proof showed an action commenced by Jennie Simon in the district court of Hughes county February 24, 1925, and dismissed without prejudice on March 31, 1925. This action was brought and dismissed within the period of limitations if Jennie Simon did not attain her majority until August 6, 1911, and has no bearing whatever upon the question. She and those claiming under her clearly had a right to bring another action at any time before August 6, 1926. But, instead of bringing the new action in the state court within said time, plaintiff commenced the new action in the United States District Court for the Eastern District of Oklahoma on March 31, 1925, less than 15 years after Jennie Simon attained her majority.

In their reply plaintiffs pleaded, and at the trial proved, this action, and that it was dismissed without prejudice February 21, 1927, on motion of defendants, and that on April 25, 1927, a supplemental bill filed with the consent of court in said cause was dismissed without prejudice on motion of defendants, and that said action had failed otherwise than upon the merits.

Defendants contend that the United States District Court not having jurisdiction, plaintiffs were not entitled to the benefit of the provision of section 190, supra. In other words, defendants contend that in order to confer the benefit of section 190, supra, the action brought in the federal court must have been one of which the federal court and the state had concurrent jurisdiction. It must be conceded that where an action is commenced in a state court which does not have jurisdiction, and the plaintiff there fails otherwise than upon the merits, and the action there be dismissed after it might have been brought in the proper state court, the plaintiff may have the benefit of said section and may commence a new action in the proper state court within one year after such dismissal. Stevens v. Dill, 142 Okla. 138, 285 P. 845, and cases therein cited.

The general rule is that, "if an action fails for want of jurisdiction of the court in which it is brought, plaintiff may commence a new action within a year thereafter." 37 C. J. 1090.

In Gaines v. City of N. Y., 215 N. Y. 533, 109 N. E. 594, L. R. A. 1917C, 203, the history of the statute is traced to the early English Limitations Act of 1623. Mr. Justice Cardozo, speaking for the court, said:

"If the protection of the statute is to be denied to him, it ought to be clearly shown that his case, though within the letter of the statute, is not within its reason. We think that the defendant has been unable to sustain that burden. The statute is designed to insure to the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts. When that has been done, a mistaken belief that the court has jurisdiction stands on the same plane as any other mistake of law. Questions of jurisdiction are often obscure and intricate. * * * There is nothing in the reason of the rule that calls for a distinction between the consequences of error in respect of the jurisdiction of the court and the consequences of any other error in respect of a suitor's rights."

Pittsburgh, etc., R. Co. v. Bemis (Ohio) 59 N. E. 745, is a case directly in point except for the difference in the wording of the statute. Our statute is, "If any action be commenced within due time," etc. The Ohio statute is, "In an action commenced or attemped to be commenced, if in due time," etc. Therein the same contentions were made as here. In the body of the opinion it is said:

"We are of opinion that the entire position of counsel rests upon a misconcep-

tion of the import of the term 'action.' It lies in assuming that in order to constitute a proceeding in a court 'an action,' the court must be competent to adjudicate the rights of the parties, and render a final judgment determining such rights, and that, therefore, the proceeding instituted and pending in the United States court was something else than an action."

And:

"It must be conceded that the weight of authority supports the proposition, as a general rule, that a dismissal of a former suit for want of jurisdiction in the court in which it is brought is such a failure as will not constitute a bar to another action; and it seems fairly well entablished that such a dismissal will leave the plaintiff, by favor of the remedial statute where such exists, to pursue his remedy further, even though by the general statute of limitations his action would be barred."

And:

"Questions of jurisdiction are often of the very nicest which lawyers have to determine for their clients, and courts to decide for litigants. It is not given to all lawyers to know all the law, or all the decisions, of course. Indeed, instances are not wanting where courts themselves have shown ignorance in both respects. Unusual acumen and prescience are not demanded, and we think it clearly unreasonable to compare the mistake in the present case as akin to the bringing of such a case before a justice of the peace or a mayor."

Our attention is called to Sweet v. Chattanooga Elec. Light Co., 97 Tenn. 252, 36 S. W. 1090. The same situation arose in that case as in Pittsburgh, etc., Ry. Co. v. Bemis, supra, but under a statute somewhat narrower than the Ohio statute. An action was commenced in the federal court which had no jurisdiction. While the action was there pending, the statute of limitation ran against the action. It was dismissed in the federal court, and thereafter an action seeking the same relief was brought in the state court. It was held that the action brought in the federal court did not suspend the running of the statute of limitation. This case and somewhat similar cases from the Supreme Court of Georgia, together with Herron v. Miller, 96 Okla. 59, 220 P. 36, and Warner v. Citizens Nat. Bank, 267 Fed. 661, are relied upon by defendants. Mr. Justice Cardozo, in Gaines v. N. Y., supra, cites the Sweet Case and Donnell v. Gatchell, 38 Me. 217, as possibly the only cases holding contrary to the general rule, but it is there pointed out that the Maine case is not entirely applicable, because the

statute suspends the running of the limitation only "for any matter of form."

The Supreme Court of Tennessee, in Davis, Agent, v. Parks, 270 S. W. 444, while holding the question there involved was one of venue and not one of jurisdiction, in discussing Sweet v. Chattanooga Elec. Light Co., supra, said:

"The case of Sweet v. Chattanooga Elec. Co., 97 Tenn. 252, 36 S. W. 1090, does not show the facts with regard to the first suit. The plaintiff may have been grossly negligent in originally choosing the forum, for all that appears, and the case may have been correctly decided on its own facts.

"But we do not consider that case authority for the proposition that however prudently a plaintiff may have acted in choosing his original forum, and however technical may have been the grounds for dismissal, a dismissal for want of jurisdiction, under any circumstances whatsoever, precludes plaintiff from relying upon the saving statute. Such a proposition is too far reaching to receive the approval of this court."

It was also pointed out that in another case, Moran v. Weinberger (Tenn.) 260 S. W. 966, the court had applied the intimation that "It would seem to follow that where one has advisedly and deliberately first chosen a forum lacking jurisdiction, he is precluded."

It will thus be seen that the sweeping declaration made in Sweet v. Elec. Co., supra, though not departed from entirely, has been greatly softened by the Supreme Court of Tennessee in its later decisions.

Herron v. Miller, supra, involves a case where the plaintiff chose to go to a foreign state and there commence an action. The action having there terminated otherwise than upon its merits, the plaintiff sought the benefit of section 190, in this state. It was held that said section refers only to actions brought within this state as provided by section 187, C. O. S. 1921. Section 187 applies to civil actions brought in the federal court in this state as well as actions brought in the state court; therefore, that case has no application to this case.

Warner v. Citizens Nat. Bank, supra, is a case where the cause of action was given by a federal statute which also required that the action must be commenced in a court of the United States having original jurisdiction in equity for the district in which the banking association may have been lo-

cated or established. Because of this particular law, it was held that section 190, supra, was not applicable. That case could not possibly apply to the situation in the instant case.

Pittsburgh, etc., Ry. Co. v. Bemis, supra, is supported by the overwhelming weight of authority. We think it is right and the reasons stated therefor are sound.

The statute of limitations does not begin to run in favor of one who held under a conveyance executed in violation of a federal restriction until the restrictions are removed. Tidal Oil Co. v. Flanagan, 87 Okla. 231, 209 P. 729; Miller v. Fryer, 35 Okla. 145, 128 P. 713; Rowe v. McIntosh, 101 Okla. 299, 225 P. 948; McLish v. White, 97 Okla. 150, 223 P. 348.

The minority of Creek freedman is a restriction upon alienation under the Act of May 27, 1908. Sandlin v. Barker, 95 Okla. 113, 218 P. 519.

The statute of limitations did not begin to run against Jennie Simon at least until she became 18 years of age. It is, therefore, unnecessary to discuss the claim of defendants that they were in possession prior to the time when she attained her majority.

We are wholly unable to agree with the trial court that there was no evidence tending to show actionable fraud in obtaining the deed dated February 23, 1925, said by the witnesses to have been signed March 3, 1926. Evidence, admitted by the demurrer to be true, in substance, shows that sometime prior to the time when the deed was signed by Jennie Simon, her coplaintiff, G. Earl Shaffer, had been employed by her to recover this land and she had deeded him an interest therein. An action was commenced in Hughes county February 24, 1925. On the day the deed here involved was executed by Jennie Simon, one C. D. Witherspoon and another man came to her home and brought with him two quarts of whisky. Some three or four others were present; during the time he was there the party drank all of the liquor. Witherspoon, who had also been present when G. Earl Shaffer had been employed to represent Jennie, represented to her that Shaffer had sent him to her to get her to sign the deed in order to settle this case. Relying upon this representation, she signed the deed. She received no consideration whatever therefor. Instead of taking the deed for Shaffer, her attorney, Witherspoon had her

execute a deed to Shepard, one of the defendants, dating it back, according to the evidence, in order to make it appear that the deed was signed before the action was commenced by Jennie Simon.

We cannot understand how any reputable attorney, much less a judge sworn to administer justice, could insist that there is no evidence of fraud. Certainly the demurrer to plaintiff's evidence should not have been sustained on this ground.

In this connection it may be well to suggest that upon another trial, if it should develop that this deed was not procured by fraud, it would in that event convey only such interest in the land as was then owned by Jennie Simon.

The judgment must be, and is hereby, reversed and the cause remanded for a new trial.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, and BAYLESS, JJ., concur. BUSBY, J., dissents. WELCH, J., absent.