Gordon MORAIN, Plaintiff in Error,

v.

Othel LOLLIS, Defendant in Error.

No. 39556.

Supreme Court of Oklahoma.

May 8, 1962.

**474**

Williams & Williams, Ardmore, for plaintiff in error.

Wilson Wallace, Ardmore, for defendant in error.

HALLEY, Justice.

Othel Lollis, plaintiff, filed an action for damages against Gordon Morain, defendant, for negligence in causing injury to his cattle. The matter was tried to a jury which returned its verdict for the plaintiff. Defendant appeals from the order of the trial court overruling his motion for new trial. The parties will be referred to as they appeared in the trial court.

Defendant's principal contention is that the trial court should have ruled as a matter of law that witness A. A. Wallace was an independent contractor and that defendant's motion for directed verdict at the close of the evidence should have been sustained.

A summary of the rules which we must use in making a determination concerning defendant's contentions is found in Mistletoe Express Service v. Culp, Okl., 353 P.2d 9, as follows:

"An independent contractor is defined as one who engages to perform a certain service for another, according to his own method and manner, free from control and direction of his employer in all matters connected with the performance of the service, except as to the result of the service. However, as a general rule, the line of demarcation between an independent contractor and a servant is not clearly drawn, but the question of such relationship must be determined upon the facts peculiar to each case, and if the evidence is such that the minds of reasonable men may differ as to whether the relationship established was that of contractee and independent contractor, or master and servant, the determination of such relationship is for the jury under proper instructions by the court. Ellis & Lewis, Inc. v. Trimble, 177 Okl. 5, 57 P.2d 244; Keith v. Mid-Continent Petroleum Corp., Okl., 272 P.2d 371; Cook v. Knox, Okl., 273 P.2d 865; Continental Oil Co., v. Elias, Okl., 307 P.2d 849.

"From the above definition and cited authorities, we find that in the determination of whether the relationship between Wolfe and Mistletoe was that of a servant or independent contractor the many elements to be considered are: (1) the nature of the contract between the parties, whether written or oral; (2) the degree of control which by the agreement the employer may exercise on the details of the work or the independence enjoyed by the contractor or agent; (3) whether or not the one employed is engaged in a distinct occupation or business and whether he carries on such occupation or business for others; (4) whether the employer or

the workman supplies the instrumentalities, tools and the place of work for the person doing the work; (5) the length of time for which the person is employed; (6) the method of payment, whether by the month or by the job; (7) whether or not the work is a part of the regular business of the employer; (8) whether or not the parties believe they are creating the relationship of master and servant; and (9) the right of either to terminate the relationship without liability."

■ The facts in the instant case are that plaintiff was the owner of 104 head of cattle which he kept on leased land in Marshall County. Defendant had a home and heating and air conditioning business at Norman, Oklahoma. A. A. Wallace was a welder by trade who built boathouses. Defendant contacted Wallace at Madill on January 9, 1957, concerning his building a boathouse like one which Wallace had built for another party a short time before. Wallace wrote down on a piece of paper the materials he would need to build the boathouse together with the cost of the items and the cost of labor. Defendant introduced the piece of paper into evidence. Testimony of defendant and Wallace showed that defendant advised Wallace he would furnish some of the materials written on the paper and the total price was lowered accordingly. Defendant agreed to and did deliver to Wallace the barrels, fire hose and paint which were part of the materials to be used to build the boathouse. There was some difference in the testimony of defendant and Wallace as to how the site was selected for the building of the boathouse. The effect of the testimony was, however, that it was agreed between defendant and Wallace that the construction would be done at a level point along a certain mile of shoreline of Lake Texoma with the specific location to be determined by Wallace. Wallace hired and paid other persons to help him. Wallace testified that defendant came to the location several times to check up on him or see if he was "doing it right"; and that although defendant did not tell him how to do the work on those occasions he could have, if Wallace had been doing it wrong. Wallace also testified that defendant had the right to fire him at any time. Defendant also assisted Wallace in towing the boathouse, after it was completed, across part of the lake to the cove where defendant had a cabin,

When the evidence in this case is viewed in the light of these rules, we find that there is room for a reasonable difference of opinion as to the proper inference concerning the relationship of defendant and A. A. Wallace from the known facts. It was therefore proper to submit the question to the jury for determination under proper instructions. Shell Petroleum Corporation v. Perrin, 179 Okl. 142, 64 P.2d 309; Meyers v. Caruthers, 83 Okl. 131, 200 P. 212; 88 C.J.S. Trial § 210, p. 458. In the recent case of Commonwealth Life Insurance Company v. Gay, Okl., 365 P.2d 149, we held that no error was committed in failing to take the question (of whether master-servant or independent contractor relationship was proven) from the jury when the evidence in the case was undisputed.

■ Defendant also complains of Instructions Nos. 6 and 7 given by the trial court. Instruction No. 7 defined independent contractor in substantially the same language as the definition given in Mistletoe Express Service v. Culp, supra, and advised the jury that if they should find that in the building of the boathouse involved A. A. Wallace was an independent contractor then the verdict must be for defendant. The instruction went on to advise the jury that if they found that Wallace was not an independent contractor but was defendant's employee, then their verdict should be for plaintiff and against defendant insofar as any acts of Wallace in the painting of the boathouse were concerned. The instruction then advised the jury that in determining whether, in a given situation, a person is an independent contractor or an employee, they should consider certain factors. They were those nine listed in Mistletoe Express Service v. Culp, supra, together with these two:

the kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; and the skill required in the particular occupation. The instruction concluded by advising the jury that ordinarily no one feature of the relationship is determinant, and all of the above things were to be considered in determining whether or not A. A. Wallace was an independent contractor or an employee of defendant.

The Instruction No. 7 correctly told the jury when one is an independent contractor and the various elements to be considered in reaching a determination of the relationship. The effect of the verdict of the jury was that Wallace was an employee and not an independent contractor. There was competent evidence to support the verdict.

Instruction No. 6, of which defendant complains, was as follows:

"You are further instructed that if you find from a preponderance of the evidence in this case, that the paint used by the defendant in the painting of his boathouse contained lead, and that such lead was poisonous insofar as cattle are concerned, or that the defendant knew or by the exercise of reasonable diligence should have known, that such lead paint was poisonous insofar as cattle were concerned, then the defendant was under the duty to keep such lead paint in a safe place, and protect it from consumption by cattle."

■ Defendant argues that the instruction amounts to advising the jury that the painting of the boathouse was "inherently dangerous"; that the instruction is in conflict with Instruction No. 7; and that there is no evidence to support the instruction. We do not agree that the instruction advises the jury that the negligent act charged against defendant through his employee was inherently dangerous. Nor do we agree that Instruction No. 6 conflicts with Instruction No. 7, because as we stated above, the jury was advised that if they found that

Wallace was an independent contractor, then their verdict must be for defendant. Concerning evidence to support the instruction, we find that the veterinarian who testified on behalf of plaintiff stated that cattle are attracted to paint, especially fresh paint, and that red lead paint was quite poisonous to cattle. Plaintiff introduced into evidence one of the cans containing the paint furnished by defendant to Wallace which can had printed on its side

"Warning: Contains lead compounds. Wash thoroughly after handling and before eating and smoking. Do not take internally."

The defendant had knowledge through his employee that the location at which the boathouse was built was used for grazing purposes. The defendant had a duty to keep the poisonous compound in a safe place. Moores v. Rumsey, 169 Okl. 103, 36 P.2d 15. Instruction No. 6 was proper in this case when taken together with those instructions of the court which defined actionable negligence.

■ Defendant also argues that no negligence was shown on the part of defendant or his employee. We have discussed some of the evidence in reaching our conclusions above. Other evidence in this case shows that defendant's employee saw the red paint on heads of several of plaintiff's cattle, that he saw tracks of the cattle around the boathouse, and that he had to repaint some spots on the boathouse. The veterinarian performed autopsies on two of the three dead cattle and stated that they died of lead poisoning. He stated that all of the living ones exhibited symptoms of lead poisoning in varying degrees. Plaintiff's leased premises were fenced and there was no showing of any other painting on the premises at or around that time. The sickness and death of the cattle occurred immediately at and after the painting of the boathouse. Suffice it to say that there was competent evidence to support the verdict of the jury.

Affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J. and DAVISON, JOHNSON, JACKSON and BERRY, JJ., concur.

IRWIN, J., dissents.