**Melba Jean FLICK, Administratrix of the Estate of Ray Louis Flick, Deceased, Plaintiff in Error,**

v.

**Elmer CROUCH, d/b/a Crouch Welding Service, Paul Watford, d/b/a Paul's Welding Service, Jack Roberts, d/b/a Jack Roberts Welding, Glenn O. Davenport, d/b/a Davenport Welding Service, A. L. McLeary, d/b/a A & M Welding Service, Andy Wright and Alma Wright, a co-partnership under the name of Wright Welding Service, Raymond Miller, d/b/a Raymond Miller Welding, and Douglas Perryman, d/b/a D & H Welding Service, Defendants in Error.**

No. 41512.

Supreme Court of Oklahoma.

May 29, 1967.

Rehearing Denied Oct. 3, 1967.

Dick Bell, Rinehart & Morrison, Oklahoma City, by Frank Seay, Seminole, for plaintiff in error.

Kenneth N. McKinney, Duke Duvall, Oklahoma City, for defendant Paul Watford, d/b/a Paul's Welding Service.

Erman S. Price, Oklahoma City, for defendant Crouch Welding Service.

Loyd Benefield and Larry Savage, Oklahoma City, for defendant Wright Welding Service.

J. A. O'Toole, Oklahoma City, for defendant Jack Roberts Welding.

Russell Holloway, Oklahoma City, for defendant Raymond Miller Welding.

Fred Black, Oklahoma City, for defendant Davenport Welding Service.

James Ross, Oklahoma City, for defendant D & H Welding Service and A. C. McLeary, d/b/a A & M Welding Service, pro se.

McINERNEY, Justice.

The question for decision is whether the trial court erred when it dismissed the instant action for wrongful death based on its finding that "exclusive jurisdiction over the subject matter of this action is in the State Industrial Court * * *" By this ruling, made after an evidentiary hearing, the trial court disposed of issues raised by defendants' separate pleas to the jurisdiction.

While working as a roughneck at a well site, decedent suffered instantaneous death when the derrick suddenly collapsed. At that time he was doing the duties of his employment with Parker Drilling Company (Parker).

This action by the widow attributes the collapse to faulty welds at the base of the derrick which failed to adhere and hold it together. She joined as parties defendant eight persons engaged in welding business under various trade names. Their defective workmanship, she alleges, is responsible for the derrick's collapse and her husband's death.

At issue in the evidentiary proceedings on the defendants' plea to the jurisdiction was the status of these defending welders in relation to Parker, decedent's employer. The welders sought to establish that at the time of the welding operations, to which the defects are ascribed, they occupied the relation of Parker's employees; hence the welders maintain that they are entitled in this suit to that immunity from common-law liability in tort for negligence which extends by the terms of 85 O.S.1961, § 44(b) to "the employer and his employees". According to the widow's contention, these welders were independent contractors. The widow complains that under the evidence adduced below the status of the welders in relation to Parker presented a jury question. She asserts error in treating that issue as one of law.

The record adduced in support of the pleas to the jurisdiction discloses the following facts:

About a month before its collapse the derrick in question underwent certain modifications designed to reinforce it so that it could be used for drilling to a greater depth. The decision to do this work was made by Parker's superintendent who went to Odessa, Texas, to procure specifications for this job. The derrick in question was then brought to Parker's Oklahoma City yard for what is referred to as "relegging". This work consists of welding steel reinforcements onto the "legs" (base) of the rig.

The first person engaged for this operation was Elmer Crouch. It was he who procured other welders. He knew all of the welders in the area. There is nothing to indicate that he was told how many men with how much equipment were to be engaged.

Crouch, who owns a truck and welding equipment, supplies his own welding rods and arc. He does business with Parker under the trade name of Crouch Welding Company. He "is not on the payroll of

Parker". Although he "has the right" to take other jobs if he wants them, he stopped doing "outside" work because "there is no use looking for any place else if you are busy". He has been "in the welding business right at fifteen years". According to Parker's assistant secretary, Crouch is treated as a contractor. Parker's relation with him is the same as with "other contracted work". Under the terms of an arrangement of long standing Crouch maintains his own insurance coverage. He submits monthly an invoice to Parker's Tulsa office. His statements are computed on a time basis at the rate of $7.00 per hour. So far as the record discloses, Crouch keeps his time records and is not required to work regular hours.

When questioned why on the relegging job Crouch was also signing invoices submitted by other welders, Parker's assistant secretary stated that Crouch was "overseeing these other welding contractors" but denied that he was acting as a foreman for Parker. Parker's drilling superintendent, as well as his assistant, both unequivocally testified that Crouch and the other welders engaged for the job were instructed only as to that which was "ultimately" sought to be accomplished. According to them, Parker was interested neither in the details of the welding activities nor in the number of welders to be engaged; what they wanted was the "ultimate complete job of that rig being relegged". They had a sketch from which the dimensions of the steel to be attached to the rig could be determined. The steel was procured by Parker and "stacked * * * up there (in the yard) to be welded onto that rig". Crouch, who was procured to do the welding and who in turn engaged the other welders, was told neither how to use his equipment or what kind of equipment to use.

There is other evidence in the record from which it may be inferred that Crouch's status in relation to Parker was that of an employee.

As a general rule the line of demarcation between an independent contractor and a servant is not clearly drawn. The question of such relationship must be determined from the facts peculiar to each case. The various elements to be considered, as set forth in Page v. Hardy, Okl., 334 P.2d 782, 784, are:

"(a) the nature of the contract between the parties, whether written or oral; (b) the degree of control which, by the agreement, the employer may exercise on the details of the work or the independence enjoyed by the contractor or agent; (c) whether or not the one employed is engaged in a distinct occupation or business and whether he carries on such occupation or business for others; (d) the kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (e) the skill required in the particular occupation; (f) whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work; (g) the length of time for which the person is employed; (h) the method of payment, whether by the time or by the job; (i) whether or not the work is a part of the regular business of the employer; (j) whether or not the parties believe they are creating the relationship of master and servant; and (k) the right of either to terminate the relationship without liability."

An independent contractor is one who engages to perform a certain service for another, according to his own method and manner, free from control and direction of his employer in all matters connected with the performance of the service, except as to the result thereof. Those who render service but retain control over the manner of doing it are not servants. Where the defendant's status forms a material issue in the case and the facts bearing on that issue are disputed, or *where there is room for reasonable difference of opinion as to the proper inference to be drawn from the known facts,* the issue is for the jury under proper instructions by the court. Morain v.

Lollis, Okl., 371 P.2d 473, 475; Fore v. McMillian, Okl., 272 P.2d 1036, 1038; Keith v. Mid-Continent Petroleum Corp., Okl., 272 P.2d 371, 377.

■ When a defendant's status forms a material issue in an evidentiary proceeding, such as in this case, which has for its object to determine whether the action sought to be prosecuted is one abrogated or taken away by the Workmen's Compensation Law, 85 O.S.1961, §§ 12 and 122, or "reserved" to the workman (or his widow) by the terms of 85 O.S.1961, § 44, the rule to be applied by the trial court should be the same as that which governs at the trial: if the evidence concerning the status of a party defendant is reasonably susceptible of but a single inference, the question is one purely of law to be decided by the court. Coe v. Esau, Okl., 377 P.2d 815, 819; but where the facts bearing on such issue are either disputed, or conflicting inferences may be reasonably drawn from the known facts, it is error to withhold the issue from the determination of the jury. Texaco, Inc. v. Layton, Okl., 395 P.2d 393, 399; Morain v. Lollis, supra.

In some of our past opinions we intimated that the question of whether the cause of action sought to be litigated stands abrogated by the terms of 85 O.S.1961, §§ 12 and 122 or is reserved to the workman (or his next of kin) by the provisions of 85 O.S 1961, § 44 presents merely a controversy over the court's "jurisdiction" of the subject-matter of the action. A closer analysis of the matter reveals that this statement is not entirely correct.

■■ A dismissal of an action on the sole ground that the court is without jurisdiction of the subject-matter of the suit is ordinarily regarded as a conclusive determination *only* of the fact that the court lacks jurisdiction. It does not generally operate as an adjudication of the "merits" and will not bar relitigation of the same cause or of any question material to its merits. Gottsch v. Ireland, Okl., 358 P.2d 1097, 1100; Lowden v. Hooper, 188 Okl. 595, 112 P.2d 172, 173; Edmison v. Crutsinger, 165 Okl. 252, 25 P.2d 1103; Stevens v. Dill, 142 Okl. 138, 285 P. 845; 50 C.J.S. Judgments § 638, p. 72; 30A Am.Jur., Judgments, § 353, p. 394; annotation in 49 A.L.R.2d 1036, 1061; cf. Powell v. Chastain, Okl., 359 P.2d 336, 340. The word "merits", as employed in the rule that a final judgment on the merits concludes the parties to the litigation and their privies and bars a new action on the same cause, means "the real or substantial grounds *of . action or defense as distinguished from matters of practice, procedure or form.*" (emphasis ours) Providential Development Co. v. U. S. Steel Co., 10th Cir., 236 F.2d 277; Crow v. Abraham, 86 Or. 99, 167 P. 590, 591; Hutchings v. Zumbrunn, 86 Okl. 226, 208 P. 224.

■ If pleadings do state a case belonging to a general class over which the authority of the court extends, then *jurisdiction attaches* and the court has power to hear and determine the issues involved. Metzger et al. v. Turner, 195 Okl. 406, 158 P.2d 701, 703. District courts are courts of general jurisdiction and their authority does extend to the general class of cases into which the case at bar falls. A "plea to the jurisdiction" based on the fact that an action stands abrogated by the Workmen's Compensation Act goes to the substance of the petition rather than merely to its form. It challenges not the form of the pleadings but the very right of the plaintiff to the recovery sought, "irrespective of formal, technical or dilatory objections or contentions". The subject-matter of such plea is that the plaintiff cannot maintain *any action at any time,* whether present or future, in respect of the supposed cause of action. Since it goes to the merits it must hence be pleaded either in bar or as a defense. At least one court has expressly held that a plea asserting the abrogation of a cause of action by the Workmen's Compensation Act is an affirmative defense and may be set up in the answer. Klasing v. Fred Schmitt Contracting Co., 335 Mo. 721, 73 S.W.2d 1011, 1016. This holding appears entirely consistent with our own practice in which any "new matter" that the plaintiff is not bound to prove in the first instance must be specially

pleaded as an affirmative defense. Venmex Oil Co. v. Thomas, 189 Okl. 407, 117 P.2d 540.

■ In short, a plea such as that which the defendants interposed here, and whose determination they procured below, invokes the jurisdiction of the court to adjudicate the merits of the action as distinguished from "matters of practice, procedure or form". Therefore, when the petition shows on its face that the cause of action stands abrogated, the plea or motion to dismiss should be treated as a demurrer, and if the facts alleged in the petition do not disclose such infirmity, the plea should be regarded and disposed of as a motion for summary judgment under Rule 13 (governing district, superior and common pleas courts of Oklahoma). That rule is patterned after Rule 56 of the Fed.Rules Civ. Proc., 28 U.S.C.A. The object of that rule is to avoid a *useless* trial, and a trial is not only *useful* but absolutely necessary where there is a genuine issue as to any material fact. On motion for summary judgment there can be no trial of fact issues since its function is to determine whether there are any genuine issues as to material facts. Such motion should therefore be denied if under the evidence reasonable men might reach different conclusions from undisputed facts. Michel v. Meier, D.C., 8 F.R.D. 464; Neff v. World Pub. Co., 8 Cir., 349 F.2d 235.

■ The rules so stated appear to be in consonance with the general principle that "A question of jurisdiction not resting on contested facts is one of law; but a disputed question of fact must be determined as such a question * * *" 21 C.J.S. Courts § 112, p. 172; 50 C.J.S. Juries § 49, p. 761.

Our decision in Dolese Bros. v. Tollett, 162 Okl. 158, 19 P.2d 570, is not in conflict with the pronouncement made here. In Dolese the known facts did not admit of more than one inference as to plaintiff's status in relation to the defendant. It was therefore quite proper for the trial court to pass upon that issue as a matter law.

■ Conflicting inferences may be drawn from the evidence as to the crucial issue of Crouch's relationship to Parker. This issue may not be decided by the court but must be submitted to the jury. Since the status of Crouch remains undetermined, it is not necessary for us to pass upon the relationship of the other welders either to Crouch or Parker. The nature of that relationship depends upon Crouch's status in relation to Parker. It suffices to say now that the facts adduced do not conclusively show a lack of jurisdiction of the subject matter. Londagin v. McDuff, 207 Okl. 594, 251 P.2d 496. Since the facts adduced do not conclusively show the lack of jurisdiction of the subject-matter, the trial court should have denied defendants' plea to its jurisdiction. When the case is tried on its merits, should the evidence then submitted on the issue of defendants' status be reasonably susceptible of but a single inference, the question of the court's jurisdiction is to be treated as one purely of law and be decided by the court; but if such evidence is either disputed or conflicting inferences may be reasonably drawn therefrom, the question of the defendants' status should be submitted to the jury along with other issues in the case.

Judgment dismissing cause for want of jurisdiction of the subject matter is accordingly reversed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, BERRY and HODGES, JJ., concur.

BLACKBIRD and LAVENDER, JJ., dissent.