**Lillian M. HARTING, Administratrix of the Estate of Kenneth M. Harting, Deceased, Appellant,**

v.

**BENHAM ENGINEERING COMPANY and affiliates, a co-partnership composed of David B. Benham, et al., Appellees.**

No. 46008.

Court of Appeals of Oklahoma, Division No. 2.

Jan. 29, 1974.

Released for Publication by the Court of Appeals Feb. 21, 1974.

Jack B. Sellers, Sapulpa, Clayton B. Pierce, and John R. Couch, Oklahoma City, for appellant; Pierce, Couch, Hendrickson, Gust & Short, Oklahoma City, of counsel.

David W. Edmonds, Oklahoma City, for appellees; Foliart, Mills & Niemeyer, Oklahoma City, of counsel.

BACON, Judge.

On December 17, 1962, appellees entered into a contract with the City of Stillwater, Oklahoma, whereby appellees were to "fur-

nish and perform the various professional services required" by Stillwater in the construction of a sewer outfall project. On February 18, 1964, during construction, a ditch on the project collapsed killing Kenneth M. Harting. His administratrix, who was his wife and appellant herein, filed suit on September 3, 1965, to recover damages for wrongful death and seven years later had a demurrer to her petition sustained with the trial court ruling appellant's exclusive remedy was in the Oklahoma State Industrial Court. That ruling is now here on appeal. (The case had previously gone through the appellate system of Oklahoma on a jurisdictional issue. See Harting v. Benham Engineering Co., Inc., Okl., 490 P.2d 1097 (1971).)

Among other things appellant's petition alleges appellees were "independent contractors who contracted with the City of Stillwater and that appellees . . . designed, engineered, supervised, and instructed the construction" of the project. Appellant further alleges Mr. Harting was employed by M. A. Swatek & Company, a contractor on the project; he was killed when the walls of the excavation caved in on him; and that the death was "directly and proximately caused by the negligence and carelessness" of appellees in their planning, design and engineering of the project. Appellant's petition also contains allegations as to damages. The trial court found the State Industrial Court had exclusive jurisdiction over the matter and sustained appellees' demurrer to appellant's petition, stating it was doing so "on the basis of Lunow v. Fairchance Lumber Company, [389 F.2d 212 (10th Cir. 1968)].

Thus the ruling for us to review is the trial court's sustention of the demurrer to appellant's petition on the basis that the State Industrial Court had exclusive jurisdiction over the matter. In urging affirmance of the trial court's ruling, appellees rely on the Lunow case, as did the trial court. We therefore will review the ruling of the trial court with particular attention given to Lunow.

In Lunow, Rockwell-Standard Corporation contracted with Fairchance Lumber Company to construct a building according to plans and specifications of architects Allen & Hoshall. Fairchance subcontracted part of its contract with Western Steel Erection Company. One of Western Steel's employees was injured and brought suit for common law liability. The court held all parties were immune from common law liability, thus the injured employee's exclusive remedy was in the State Industrial Court for workmen's compensation. In affirming the case on appeal, the United States Court of Appeals, Tenth Circuit, held the principal employer (Rockwell) was liable for workmen's compensation for its direct employees or the employees of any subcontractor, and was thus immune from common law liability. The court further held that immunity extended to the architects because they were the agents of the primary employer (Rockwell) who was immune from common law liability.

The court went on to discuss the law and facts and in the final paragraph of the opinion the court deals with the liability of the architects. That last paragraph relating to the architects' liability is the language the trial court and appellees rely upon in the present case. That paragraph of such persuasive authority reads:

"Appellees Allen & Hoshall are alleged to have committed numerous and specific acts of negligence contributing to the husband's injuries. *But, as architects employed by Rockwell, they were the agents of their employer, i. e. see 6 C.J. S. Architects § 7.* And, it seems to be alleged and conceded that the alleged negligent acts were performed in the course of their employment. Any acts of negligence were, therefore, directly attributable to Rockwell which we have held to be immune from the asserted liability." (emphasis ours)

The parties devote almost their entire argument to the similarities or dissimilarities of architects and engineers as they re-

late to being an agent of the primary employer, and do not argue that which we feel to be the crucial issue in this case— were appellees agents or independent contractors. Appellant says the functions are different and engineers are not agents, thus Lunow would not apply. Appellees, however, argue "engineering is a 'learned' profession" like architecture and thus Lunow does apply.

Both arguments seem to assume architects are always agents and never independent contractors. Such is not the law. Lunow does not contain the contract between the architects and Rockwell, and we have no way to determine upon what facts the court based its conclusion' that the architects were agents of Rockwell as opposed to being independent contractors. Absent these facts and faced with only the conclusion architects are agents of their employer based upon 6 C.J.S. Architects § 7 (1937), we are unable to say Lunow is controlling in the present case. We think

the court in Lunow did not intend such language to be a pronouncement of the law pertaining to architects in all situations, because 6 C.J.S. Architects § 7 (1937) itself states an architect *is generally* held to be an agent.[1] Such section does not say *is always* held to be an agent and clearly was not intended to be read as *always* because 56 C.J.S. Master & Servant §§ 3(2)[2] and 3(9)[3] (1948) and 65 C.J.S. Negligence § 95[4] (1966) indicate otherwise as does the law in Oklahoma.

■ In Oklahoma, it is clearly the law that to determine if a person is a servant or independent contractor, be he architect, engineer or whatever, one must look to the facts of each case. In Sinor v. Hart, Okl., 383 P.2d 669 (1963), the court quoted Mistletoe Express Service v. Culp, Okl., 353 P.2d 9 (1959), saying:

"The line of demarcation between an independent contractor and a servant is not clearly drawn, but the question of

1. "*An architect is generally held to be an agent* with limited authority and not a general agent, except where the contract so provides, although for certain purposes he may be the general agent of the owner. Hence, the powers and authority of an architect are determined by the general rules of agency and *may be limited by his contract*, the contracting parties being allowed to restrict or entirely remove the powers if they so desire, but the owner is liable for his acts within the scope of his agency." (emphasis ours)

2. "As discussed supra § 3(1) an 'independent contractor' is generally defined as one who in rendering services exercises an independent employment or occupation and represents his employer only as to the results of his work and not as to the means whereby it is to be done, and the question whether one is a servant or an independent contractor has been considered in many cases, and various tests have been applied in determining it. It has frequently been stated that it is impossible to lay down any hard and fast rule to determine whether a particular relationship is one of master and servant or contractee and independent contractor, and that each case must be determined on its own facts."

3. "Under the rules and tests discussed supra §§ 3(2)–3(8) for determining whether a master-servant or contractee-independent contractor relationship is established, various

persons or entities have been held to be independent contractors, such as an actor, *architect . . . engineer*. . . . So too persons engaged in construction work in general, persons who undertake the construction of an entire building or specific portions thereof, and road construction, persons engaged to make repairs or improvements on a building, *a builder who by the contract is required to furnish plans and specifications, architectural services*, superintendents, and all labor and material, although the owner was to pay the cost of labor and material and a stated sum in addition, *and one who agrees to superintend the erection of a building for a per cent of the cost* and to furnish appliances have been held independent contractors." (emphasis ours)

4. "In varying circumstances, architects and engineers have been held or held not liable on the ground of negligence in the performance of their duties.

"An engineering firm may be liable for injury sustained as a result of its negligence.

" . . . [A]nd an architect who plans and supervises construction work as an independent contractor may be liable for his failure to exercise ordinary care in the course thereof for the protection of any person who, foreseeably and with reasonably [sic] certainty, may be injured by his failure to do so . . . . ."

such relationship must be determined upon the facts peculiar to each case, and if the evidence is such that the minds of reasonable men may differ as to whether the relationship established was that of contractee and independent contractor or master and servant, the determination of such relationship is for the jury under proper instruction by the court."

The court also cited Morain v. Lollis, Okl., 371 P.2d 473 (1962).

"An independent contractor is defined as one who engages to perform a certain service for another, according to his own method and manner, free from control and direction of his employer in all matters connected with the performance of the service, except as to the result of the service."

See also Burke v. Thomas, Okl., 313 P.2d 1082 (1957).

In the Culp case the court lists some of the numerous elements considered in determining whether one is an independent contractor or an employee. These elements include: (1) nature of the contract, oral or written, (2) degree of control, (3) distinctness of occupation and whether done for others, (4) who supplies tools, etc., (5) length of employment, (6) method of payment, (7) whether part of regular business of employer, (8) what relationship parties believe they created, and (9) right to terminate relationship without liability.

■ In the present case, the contract between appellees and Stillwater is in writing and clearly is not one of master-servant. The contract enables appellees to do their work free from the control of Stillwater. Appellees clearly have a distinct occupation which it does for others than just Stillwater. Stillwater does not furnish appellees with tools or instrumentalities with which they conduct their business. The length of employment is governed by the contract, and is for a definite time for a definite amount, with provisions for additional compensation for anything done not provided for in the contract or for any changes made. That which appellees are to do under the contract is certainly not the regular business of Stillwater. One party cannot terminate the relationship without liability. It is clear the parties to the contract *did not* intend to create a master-servant relationship. The contract is between two parties under which appellees are free from Stillwater's control and direction except as to the result contracted for by Stillwater.

■ It must be kept in mind the issue before us is a demurrer to a petition. In addition to the foregoing, we also note the petition alleges appellees were independent contractors and the contract was later attached to the petition, thus preventing such allegation from being a mere conclusion and sufficient to withstand a demurrer. It is fundamental law and no citation seems necessary that in reviewing the ruling on a demurrer to a petition, we must look to the petition in a light most favorable to the pleader and all facts well pleaded will be taken as true along with reasonable inferences drawn therefrom. Here, it certainly can be said that one favorable inference to be drawn from appellant's petition is that appellees were independent contractors, not agents of Stillwater, and thus not entitled to the immunity from common law liability afforded under 85 O.S.1971, § 12.

We conclude the trial court erred in sustaining appellees' demurrer to appellant's petition as amended and the cause is therefore reversed and remanded to the trial court with instructions to overrule the demurrer and proceed in a manner consistent with the views expressed herein.

BRIGHTMIRE, P. J., and NEPTUNE, J., concur.