## LIBERTY NAT. BANK OF WEATHERFORD v. LEWIS.

No. 22195.   April 30, 1935.

Meacham, Meacham & Meacham and A. J. Welch, for plaintiff in error.

Thos. Hudgens and Darnell & Darnell, for defendant in error.

PHELPS, J. This is an appeal by the defendant bank from a verdict and judgment against it and in favor of the plaintiff, whose evidence reasonably tended to prove the following facts: On March 5, 1925, the bank was in possession of a promissory note executed by Louis Hamburger, in the sum of $1,150 and payable to the order of R. Neeley. Neither the petition nor the evidence indicates whether the bank was holding the note as owner thereof, as agent for its sale, or for some other purpose. On that date it sold the note to plaintiff for the sum of $1,150, and plaintiff gave the bank his check for that amount in payment for the note. The bank cashed the check, and it was received in evidence at the trial of the case. Plaintiff left the note with the bank for collection. The maker of the note made four payments thereon to the bank. The first three of these four payments were credited by the bank in plaintiff's account; the amounts and dates of these payments, as testified to by the maker, tallied with the amounts and dates entered in plaintiff's pass book, as deposits to his credit, by the bank. The maker testified that he made the fourth and final payment of $815.50, but the record as to the date thereof is somewhat uncertain; it appears to have been paid some time between May and August of 1927. But the last payment was never credited to plaintiff's account in the bank and was never turned over to him. He testified that he asked the president of the bank about it some time in August of 1927 and was told that the payment had not been made; that from time to time thereafter

he inquired of the president and was likewise informed that no further payment had been received. Plaintiff's uncontradicted testimony was further to the effect that he had no knowledge of the final payment having been made by the maker until "after Mr. Galloway was out of the bank." Galloway was the president, with whom the plaintiff appears to have dealt more than with any other officer or representative of the bank. The approximate date upon which Mr. Galloway severed his connections with the bank is therefore important. There is no definite testimony in the record concerning said date, but "the change in management" is at several places referred to as having occurred on June 5, 1928, and that is the date which the subsequent president testified that he began functioning as such. Therefore we assume that Galloway continued in charge as president until that date.

The bank introduced evidence to prove that such transactions as are involved herein are customarily entered on the books and records of the bank and that said books and records for the period in question do not reveal any evidence whatever of this transaction having ever occurred. However, no person testified who was connected with the bank during that time. The petition was filed and summons issued and served more than two years and less than three years after the last payment.

The first proposition urged by the defendant is that both the petition and the evidence showed that plaintiff's right to recovery was barred by the two-year statute of limitation applicable to an action for conversion. In meeting this argument the plaintiff contends that it was not an action for conversion but for violation of an oral contract, to which the three-year limitation is applicable. The real point in the case is the question of when the statute of limitation began to run, regardless of whether it was the two-year or three-year statute.

An exception to the usual rule that the time of limitation begins to run when the cause of action has accrued is found in cases where the party seeking the benefit of the statute willfully conceals from the opposite party material facts or information necessary to the accrual of his cause of action. And especially is this so when there exists between the parties a fiduciary relationship, or one of trust. From the evidence in this case the jury was authorized to believe that the president of the defendant bank, after the final payment to the bank by the maker, willfully and fraudulently misled the plaintiff, and lulled him along in the belief that said payment had not been received, and continued to do so until July 5, 1928, and that it was not until that date that the plaintiff knew that his cause of action had accrued. Had the bank and its representatives simply kept quiet about the matter, and had neither affirmed nor denied that the payment had been received, it would probably not be a case of willful misleading, but when by its own fraudulent conduct the defendant contributed to the delay in the filing of this suit it cannot be heard to say that said delay must bar the plaintiff's right of recovery. With certain exceptions, a party who wrongfully conceals material facts, or the fact that a cause of action has accrued against him, and said concealment is the cause of the delay in filing suit, cannot avail himself of the statute of limitation as a defense. Waugh v. Guthrie Gas, etc., Co., 37 Okla. 239, 131 P. 174, L. R. A. 1917B, 1253; Oklahoma Farm Mortgage Co. v. Jordan, 67 Okla. 69, 168 P. 1029; Weems v. Melton, 47 Okla. 706, 150 P. 720; Clover v. Neely, 116 Okla. 155, 243 P. 758; Brookshire v. Burkhart, 141 Okla. 1, 283 P. 571, 67 A. L. R. 1059.

We are not of the opinion that the fact of plaintiff's living in the same community with the maker of the note and that he could have gone to the maker and learned that the payment had been made, should take this case out of the operation of the principle above announced. Plaintiff had constituted the bank his agent for the collection of the indebtedness; he may have done this not only for convenience but to avoid the necessity of personally pressing the maker for payment. In fact we even went so far in Farmers State Bank of Ada v. Keen, 66 Okla. 62, 167 P. 207, and Clover v. Neely, supra, to hold that even though the facts which would have revealed the fraud are a matter of public record, the plaintiff should not be charged with constructive discovery of the fraud when a relation of trust or confidence exists, making it the duty of the defrauder in the trust capacity to disclose the true state of facts.

The foregoing discussion has been based upon the assumption that we recognize the defendant's contention that the action was one for conversion, under which the two-year statute of limitation is applicable. But it is not necessary to this opinion that we class the action as one for the recovery of damages by reason of conversion. In the

case of Weems v. Melton, supra, wherein the action was against the president personally instead of the bank, we held that regardless of the tort the plaintiff could sue upon the implied promise of defendant to return to plaintiff the money thus wrongfully appropriated. In that case, as in this, the defendant contended that the petition was predicated entirely on the theory of a conversion and that it alleged that the defendant "converted said sum of money to his own use and benefit," and that hence the two-year limitation applied. Said the court in that opinion:

"We cannot agree with this analysis of the issues involved. In this jurisdiction, where the old common-law causes of action and the distinction between suits in equity and actions at law are abolished, all that is required of the plaintiff is to state in his petition the facts constituting his cause of action in ordinary and concise language and without repetition. Section 4737, Rev. Laws 1910. However, as the Codes do not create any new rights, but merely provide the mode in which redress may be had when a right has been invaded, the judges and lawyers of the Code states, for convenience, often resort to the old classification in testing the sufficiency of the pleadings to state a cause of action, or the evidence to support a judgment. Phelps, Dodge & Palmer Co. v. Halsell & Frazier, 11 Okla. 1, 65 P. 340. Counsel have fallen into error in classifying this as an action for conversion; it sounds more in contract as for money had and received. It is true that the relation between a bank and a depositor is that of debtor and creditor, but in the instant case the plaintiff in error, taking advantage of the opportunity to do so afforded by his official station, gave the defendant in error an apparent status which she was at liberty to reject or accept as her interests might be subserved, upon discovering, long after the affairs of the bank had been wound up, that neither her deposit nor the note for the payment of which it was wrongfully misappropriated had been turned over to the trustees with the other assets of the liquidating bank. Undoubtedly the defendant in error could have stood upon her rights as a creditor and sued the bank for the recovery of the balance of her deposit, but we know of no principle of law, and none has been called to our attention, which bars her from waiving her rights against the bank. and from suing the plaintiff in error upon the discovery of his wrongful acts in charging her deposit off the books and applying the amount thereof in payment of the note of another without her knowledge or consent. It seems to us that upon this condition of affairs coming to the knowledge of the plaintiff she would be entitled to accept the situation created by the defendant as she found it and sue him upon the implied promise to return to her the money thus wrongfully misappropriated, which always arises whenever one person commits an unlawful act or an act of misfeasance and positive aggressive wrong against another with the intention of benefiting his own estate. In such circumstances the law will, at the election of the party injured, imply or presume a contract on the part of the wrongdoer to pay to the party injured the full value of all benefits resulting to such wrongdoer. Challiss v. Wylie, 35 Kan. 506, 11 P. 439."

Defendant next contends that it was error for the court to exclude evidence of the lack of the president's authority, under the by-laws and regulations of the bank, to negotiate the deal in controversy, without the approval of the board of directors. If this was error, it was harmless. It is nowhere evidenced in the record that the note belonged to the bank, but even if it did belong to the bank, and even if it be conceded that the president lacked authority to sell it, nevertheless the bank ratified the actions of the president by accepting and receiving the proceeds of the transaction. There was convincing evidence that the bank did receive the payments made by the maker, and said payments were not on all occasions received by the president. Defendant's own citations of authority, particularly 7 C. J. 784, recognize the principle that subsequent ratification of the unauthorized action of the bank's agent or representative will bind the bank.

Defendant further complains that the trial court erred in failing to instruct the jury, upon the court's own motion and in the absence of a proper request by the defendant, upon the issue of the lack of authority of the bank president to bind the bank, and also on the issue of the statute of limitation. In view of the principles hereinbefore discussed, it is unnecessary to discuss this assignment. On all matters relevant to the statute of limitation, the plaintiff's evidence was uncontradicted; on the question of the authority of the president and concerning the sale of the note, the bank records did not contradict the plaintiff's evidence that the maker of the note made the payments and that the bank accepted the first three of said payments and turned them over to plaintiff. Hence there was no material conflict in the evidence on these issues, and instructions thereon were unnecessary.

The judgment is affirmed.

106

McNEILL, C. J., and BUSBY, CORN, and GIBSON, JJ., concur.