JANET WHETSEL, Plaintiff, v. CHARLES E. GOSNELL, Defendant.

(*July* 31, 1963.)

LYNCH, J., sitting.

*Thomas Herlihy, Jr., Joseph M. Kwiatkowski, Francis J .Trzuskowski* and *Thomas Herlihy, III*, for Plaintiff.

*John P. Sinclair* (of Berl, Potter and Anderson) for Defendant.

Superior Court for New Castle County, No. 1467, Civil Action, 1963.

LYNCH, Judge.

The plaintiff and defendant were involved in an automobile accident in Wilmington, Delaware, which happened on November 12, 1958.

Plaintiff claiming to have sustained personal injuries as a result of this accident began suit against defendant on November 4, 1959, by filing Civil Action No. 1255, 1959. The summons in that case was issued on November 9, 1959 and was returned *non est* by the Sheriff on November 29, 1959. An alias summons was then issued; it was returned *non est* by the Sheriff on December 31, 1959. A first pluries summons issued on April 12, 1960 and it was served by the Sheriff on April 26, 1960. The return of the Sheriff on this pluries summons was made on April 26, 1960, and showed the service was accomplished by leaving

a copy with Irene Daniels at 2515 Washington Street, Wilmington, Delaware. This was described in the Sheriff's return as the usual place of abode of the defendant.

On May 11, 1960 defendant filed a motion to dismiss in Civil Action No. 1255, 1959, on the ground that service was improper in that the premises at 2515 Washington Street, Wilmington, Delaware, were not the dwelling house or usual place of abode of the defendant.

The record in Civil Action 1255, 1959 shows that the Court found that the defendant's usual place of abode at the time of purported service was the United States Naval Academy in Annapolis, Maryland, and that the place of purported service, 2515 Washington Street, Wilmington, Delaware, was the home of the defendant's grandparents where he had resided, before entering the Naval Academy en route to a career as a naval officer. As a consequence the Court ordered the motion to dismiss be granted on November 17, 1961; the exact language of the order was— "Ordered, adjudged and decreed that the complaint be and the same is hereby dismissed for insufficiency of service of process".

On December 4, 1961 plaintiff appealed said order of dismissal and on April 26, 1962 the Delaware Supreme Court affirmed the judgment of the Superior Court. 181 A.2d 91.

On November 21, 1962 the plaintiff began this Civil Action in which she seeks to recover for the injuries she sustained in the automobile accident of November 12, 1958.

Paragraph 7 of her complaint is as follows:

"The original service of process in this cause having been determined inadequate by a decision of the Supreme Court of the State of Delaware, on April 26, 1962, this

complaint is now filed pursuant to and in accordance with the provisions of Title 10 Section 8118(a) *Delaware Code."* The summons, as a consequence of this new action, was returned *non est* on December 11, 1962; an alias summons was returned *non est* on January 17, 1963, but a first pluries summons was served personally on defendant in Wilmington, Delaware, on March 22, 1963. On April 1, 1963 defendant moved to dismiss the complaint on the ground that it failed to state a cause of action upon which relief can be granted against him since it appears from the complaint plaintiff's claim is barred by the statute of limitations. This seems clearly to be true unless this action is saved from the bar of the statute of limitations by the provisions of Section 8117(a) of Title 10 *Delaware Code,* or that the filing of this action was timely, in that it was brought within one year from date of the ruling by the Supreme Court, affirming the order of dismissal.

Title 10 *Delaware Code,* § 8117(a) provides as follows:

"If in any action duly commenced within the time limited therefor in this chapter, the writ fails of a sufficient service or return by any unavoidable accident, or by any default or neglect of the officer to whom it is committed; or if the writ is abated, or the action otherwise avoided or defeated by the death of any party thereto, or for any matter of form; or if after a verdict for the plaintiff, the judgment shall not be given for the plaintiff because of some error appearing on the face of the record which vitiates the proceedings; or if a judgment for the plaintiff is reversed on appeal or a writ of error; a new action may be commenced, for the same cause of action, at any time within 1 year after the abatement or other determination of the original action, or after the reversal of the judgment therein."

The main point raised by the briefs and at oral argument is the issue of when plaintiff's first suit—i. e. Civil Action No. 1255, 1959—abated.

Defendant's attorney has stated the issue for decision in about this language—Did it abate on November 17, 1961—when the Superior Court ordered it dismissed—or did the appeal to the Supreme Court, resulting in affirmance of the order of dismissal on April 26, 1962, operate to suspend the abatement of the suit until the date of affirmance in the Supreme Court, so the suit abated on April 26, 1962 and not on November 17, 1961.

Defendant argues that if plaintiff's first action "abated" on November 17, 1961 by reason of the ruling that service of process was insufficient the plaintiff was required to file her second suit "within 1 year" from that time—and not within 1 year of the date of the Supreme Court's affirmance of the order of dismissal, entered November 17, 1961.

Plaintiff says—in her consideration of defendant's argument, that the action begun on November 22, 1962 should have been instituted within 1 year of November 17, 1961, the date of the Superior Court ruling, and not from the date of the Supreme Court decision of April 26, 1962, affirming the order of dismissal entered in this Court—that an overwhelming majority of cases hold that the time limited for the recommencement of an action is to be measured from the date of affirmance of an appeal of a judgment or decision adverse to the plaintiff and not from the date of the judgment below, and she cites *Rowland v. Beauchamp* (1960) 253 N.C. 231, 116 S.E.2d 720, 79 A.L.R.2d 1263; Anno. 79 A.L.R.2d 1270; *Zielinski v. United States* (2nd Cir., 1941) 120 F.2d 792; and *Holland v. Schwartz* (1940) Sup., 22 N.Y.S.2d 283. Plaintiff says that defendant's argument is really this—that plaintiff

should forego all right of appeal, and cites cases which hold that a plaintiff is *not* required to risk his privilege of renewal of suit by taking an appeal, and cites 34 Am. Jur. 231—Lim. of Actions—Sec. 287 and cases cited in 1962 Cumulative Supplement at p. 54.

Considering the proposal made by the defendant that a new action should have been commenced while plaintiff's appeal in the first case was pending before the Supreme Court, this reasoning, says plaintiff, was answered by Judge Andrews of the New York Court of Appeals in *Wooster v. Forty-Second St., etc., R. R. Co.* (1877) 71 N.Y. 471, who said at p. 473:

"We think the statute, by a reasonable interpretation, gives him the right to bring the new action within a year after the affrmance in this court. It was the final reversal of the judgment originally rendered * * *. If the plaintiff had succeeded in both the lower courts, and the defendant had obtained a reversal in this court, the plaintiff clearly would have had the right to bring a new action within a year after such reversal. It would be an inconvenient construction to hold that the plaintiff, in a case like this, must bring a second action while the appeal to this court in the first action is pending, in order to save his cause of action from being barred by the statute. The judgment of this court might, and in many cases would, determine the right of the parties in the controversy, and prevent further costs and litigation."

Before giving any consideration to this argument, the Court considers it desirable to analyze *Giles v. Rodolico*, post, considering 10 *Del. C.* § 8117(a), and relied on by both sides, and determine from such analysis if that case is in any wise dispositive of the situation here before the Court.

In *Giles v. Rodolico*, 1 Storey 143, 140 A.2d 263 (1958) the Delaware Supreme Court had occasion to construe Title 10 *Del. C.* § 8117(a). That case arose at a time when the rules of Court required that the praecipe for an alias summons be filed within twenty days after the return day of the preceding writ; in fact, it appears the praecipe for the alias writ was not filed until forty-eight days after the return of the original writ. As a result the defendant moved to dismiss the complaint on such grounds.

The Superior Court sustained the motion to dismiss on those grounds. The plaintiff then filed a new suit in the Superior Court relying upon Title 10 *Del. C.* § 8117(a) to save the new suit from operation of the statute of limitations, but he also appealed to the Delaware Supreme Court from the order dismissing the original action. The defendant also appealed from the order of the Superior Court granting plaintiff leave to file his second action.

In its opinion the Supreme Court made the following observation in connection with its determination of plaintiff's appeal from the ruling on defendant's motion to dismiss in this Court: (1 Storey 145, 140 A.2d 265)

"* * * The defendant contended that the suit was a nullity because no jurisdiction over the person of the defendant was obtained under the original writ, and no alias writ could be issued to bring the defendant into court because more than 20 days had elapsed after the return of the original writ. It is, of course, obvious that by this time the one year period of limitation had run from the date of the accident."

A further observation was made by the Supreme Court (1 Storey 146, 140 A.2d 265):

"* * * The court further ruled that the failure to issue an alias writ within the prescribed time limit con-

stituted a failure to obtain jurisdiction over the defendant and therefore dismissed the action. The court, however, went on to state that the policy of the Superior Court is to avoid forfeiture of substantive rights because of procedural technicalities and, as a part of its order dismissing the action, granted leave to the plaintiff to commence a new action under 10 *Del. C.* §8117."

The Supreme Court thereafter ruled (1 Storey 147, 140 A.2d 266):

"It does not serve to argue as does the plaintiff that the 20-day period for the issuance of alias writs serves no useful purpose and thus should be disregarded, for the reason that jurisdiction over persons can be acquired by the courts of this state solely through service of compulsive process. *Cf. Canaday v. Superior Court,* 10 Terry 456, 119 A.2d 347. It is still necessary, therefore, in order to keep a suit alive and to toll the running of the statute of limitations that it not be permitted to abate by inaction. It follows that there must be continuity in the issuance of process through which, and only through which, the court can acquire jurisdiction over the person of a defendant. *Cf. Webb Packing Co. v. Harman, supra,* [9 W. W.Harr. 22, 196 A. 158].

"We are of the opinion, therefore, that the failure to issue an alias writ not later than 20 days after the return of the original brought the proceeding to an end; that it at that time fell into abeyance; and since in our opinion the attorney's affidavit falls short of proving 'excusable neglect' for the failure to comply with the rule, the action was properly dismissed. This disposes of the plaintiff's appeal."

It was in a consideration of the cross-appeal filed by defendant in the case that the Supreme Court gave consideration to the rules of construction to be given to 10 *Del. C.* § 8117(a).

The Supreme Court reviewed the historical derivation of the section and concluded that it should be liberally construed.

At 1 Storey 149, 140 A.2d 267, the Court noted:

"This statute finds its forerunner in a statute enacted by 7 Laws 266 in 1829 which provided for the filing of a new action if an adverse judgment against a plaintiff be afterward reversed or be entered on a plea in abatement.

"This early act came before the court in *Bishop v. Wilds' Adm'r,* 1 Har. 87. In considering its purpose and effect, the court refers to an English statute upon which the 1829 act was patterned, and makes the following remarks:

" 'It may not be amiss to remark, that this section has in England received not a rigid or merely literal construction, but a liberal one; and that cases not within the *words* of the section * * * have by an equitable construction of that section been held within it. The inclination of the courts in England has not been to circumscribe the operation of this section, but rather to enlarge its limits and to embrace within it those cases which *equitably* ought to be covered by it.' (Emphasis not supplied.)

"We think the quoted language of the court established a policy of construction for that early statute which carries over to the succeeding statutes. That § 8117 is a similar statute admits of no doubt because it, too, is designed to mitigate against the harshness of the defense of the statute of limitations raised against a plaintiff who,

through no fault of his own, finds his cause technically barred by the lapse of time. The instant case seems to us to be typical for, through a careless oversight of counsel, this plaintiff will be otherwise denied his day in court."

From the foregoing analysis it seems fairly clear that what was before the Supreme Court in the cited case is quite different from the question here presented, hence this Court rules that the cited case is not determinative of the question presented in this case; the Court further rules that 10 *Del. C.* § 8117(a) applies to aid plaintiff—if the one year period runs from date of Supreme Court's affirmance of the order to dismiss Civil Action 1255, 1959.

United States District Judge Kraft of the United States District Court for the Eastern District of Pennsylvania, in *Wilt v. Smack,* 147 F.Supp. 700, 703 (1957), considering a personal injury action which had been dismissed in Delaware because of want of venue and later recommenced in the Pennsylvania Federal Courts, after the expiration of the time for filing such suits in Delaware, concluded after a discussion of the history and purpose of the Delaware statute:

"\* \* \* A liberal construction of the Delaware statute therefore seems authorized, and it leads to the conclusion that the rights of the plaintiff, who filed a timely action which was dismissed on a ground unrelated to the merits, should be preserved notwithstanding the intervention of the bar of the statute of limitations."

It was necessary for Judge Kraft to apply the Delaware statute. He gave extensive consideration of the meaning of statutes like 10 *Del. C.* § 8117(a) and referred to many cases, including *Woods v. Houghton,* 1 Gray (Mass.) 580, 583, relied on by plaintiff here, and *Johnson v. Sikes,* 56 Conn. 589, 591.

After citation and analysis of these and other cases, Judge Kraft ruled (147 F. Supp. 700, 703) :

"Clearly the tenor of these decisions is that grounds for dismissal which do not touch the merits of a controversy are within the spirit, if not the letter, of the ameliorative Journey's Account statutes so that, after dismissal on such a ground, institution of a second action is permissible despite the intervention of the period of limitations. * * *"

Mr. Justice Sturtevant of the Supreme Court of Vermont in *Hayden v. Caledonia Nat. Bank of Danville* (1942) 112 Vt. 491, 28 A.2d 389, at 392, 142 A.L.R. 1178, explained the meaning to be given to the phrase "for matter of form", see 10 *Del. C.* § 8117(a), saying:

"Having in mind the purpose of the statute as before stated, the reason why the words 'or for matter of form' are made to qualify the words 'defeated or avoided' and do not qualify the words 'is abated' is apparent. If a writ is abated for any cause whatever and an action is thereby terminated, there has been no determination of the merits of that case. Likewise if an action is defeated or avoided for a matter of form the merits have not been determined. But if an action is defeated or avoided for a matter of substance, then the merits having been determined and it is not the purpose of this statute to allow the bringing of a new suit when the first one has been determined on its merits."

See also *Swiontek v. Greenstein* (1961) 33 Ill. App.2d 355, 179 N.E.2d 427; *Scott v. Nance* (1960) 202 Va. 355, 117 S.E.2d 279; *McDaniel v. North Carolina Pulp Company* (1956) 198 Va. 612, 95 S.E.2d 201; *Duff v. Zonis* (1951) 327 Mass. 347, 99 N.E.2d 47; *Sinclair Refining Co. v. Bennett* (6th Cir., 1941) 123 F.2d 884; *Hawkins v. Scottish Union and National Ins. Co.* (1915) 110 Miss. 23, 69 So.

710, and *Taft & Co. v. Daggett* (1859) 6 R.I. 266; Annon.—145 A.L.R. 1185; see further 34 Am.Jur. 226—Lim. of Actions—§ 379, et. al.; 54 C.J.S. Limitations of Actions § 292d, p. 360.

Upon consideration of the authorities and the cases ctied, it seems clear that the statement to be found in the annotation appearing in 79 A.L.R.2d 1270 at page 1276, represents the prevailing law. It is stated in the annotation:

"Under various renewal statutes, it has been held in an overwhelming majority of cases that the time limited for the recommencement of an action is to be measured from the date of the affirmance on appeal of a judgment or decision adverse to the plaintiff, not from the date of the adverse decision or judgment below. In other words, the plaintiff is not required to risk his privilege of renewal by taking an appeal. *  *  *."

At 79 A.L.R.2d page 1278, the annotator stated:

"Any authority which might be considered contrary to that represented supra is fragmentary and uncertain. *  *  *."

Because of what appears above I have no alternative but to rule that the one year period provided in 10 *Del. C.* § 8118(a) began to run after the Supreme Court's order of affirmance in Civil Action No. 1255, 1959—and not from the date of the order of dismissal in this Court. This requires the Court to overrule and deny the motion to dismiss.

Order on notice.