**Guy GRIDER, Appellant,**

v.

**USX CORPORATION, a Delaware corporation; Texas Oil & Gas Corp., a Delaware corporation; TXO Production Corp., a Delaware corporation; Ratliff Exploration Company, an Oklahoma corporation; Ratliff Drilling Company, an Oklahoma corporation; Diversified Oil & Gas Exploration, Inc., an Oklahoma corporation; Diversified Well Servicing Corp., an Oklahoma corporation; Barton W. Ratliff, individually; and Jim D. Brewer, individually, Appellees.**

No. 74997.

Supreme Court of Oklahoma.

Feb. 23, 1993.

Daniel J. Gamino, Daniel J. Gamino & Associates, P.C., Oklahoma City, for appellant.

James W. Dawson, Merson & Campbell, Oklahoma City, for appellees Diversified Oil & Gas Exploration, Inc., Diversified Well Servicing Corp., and Jim D. Brewer.

Robert D. Nelon, G. Babette Patton, Andrews, Davis, Legg, Bixler, Milsten & Price, Oklahoma City, for appellees USX Corp., and Texas Oil & Gas Corp., and TXO Productions Corp.

Robert D. Baron; Eric S. Eissenstat, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, for appellees Ratliff Exploration Co., Ratliff Drilling Co., and Barton Ratliff.

SUMMERS, Justice:

Although this appeal arrives here on certiorari in a seemingly complicated procedural posture, resolution of a single first-

impression issue disposes of most of it. That issue requires our interpretation of 12 O.S.1981 § 100, the "savings" statute which allows an additional year to bring a new action after a suit fails for reasons other than upon its merits. Is the one year period counted from the dismissal order of the trial court, as defendants urge, or from the terminal date of a timely appeal, as argued by plaintiff? We resolve the question in favor of the plaintiff's theory, and thus reverse most of the trial court's order dismissing the latest suit as untimely. Only that portion of the lower court's dismissal as to defendant USX remains undisturbed, and that is because plaintiff's appeal as to the order dismissing that defendant was untimely (actually premature), and must be dismissed.

Plaintiff Grider, an Oklahoma City grocer, apparently experienced an unsuccessful oil and gas venture as a working interest owner in the early 1980's. In the aftermath he filed suit in state court on February 22, 1985, alleging fraud and embezzlement. The defendants were Ratliff Exploration Company (REC), Ratliff Drilling Company (RDC), TXO Production Corporation (TXO), and Texas Oil & Gas (TOG). On September 29, 1986, he dismissed the case without prejudice and refiled it the same day in federal court. The federal complaint was based on the same transactions as the state suit and contained the same allegations of fraud and embezzlement, as well as new allegations under the Racketeering Influenced and Corrupt Organizations Act (RICO) and antitrust violations. This suit named as defendants those first named in the state action, and added Diversified Oil and Gas Exploration Inc. (DOG), Diversified Well Servicing Corporation (DWS), Barton Ratliff individually and Jim Brewer individually. All theories of recovery centered on transactions which occurred during the years 1982 through 1985.

On April 2, 1987, the suit was dismissed by the federal court. As the basis for its dismissal the federal court held that the complaint failed to state a RICO claim.

Because the federal claims were dismissed, the pendent state claims were also dismissed. Grider filed an appeal and on March 21, 1989, the Tenth Circuit Court of Appeals affirmed the dismissal. On October 2, 1989, the U.S. Supreme Court denied certiorari. On October 12, 1989 Grider again filed suit in state court. This suit was based on the same set of facts as the first state suit and the federal suit. The same defendants were named as were named in the federal suit, and USX, the new owner of TXO and TOG, was added as a defendant. The defendants, appellees here, filed motions to dismiss. As grounds for dismissal all defendants urged that the claims were time-barred. The trial court granted the motions on January 17, 1990.

On appeal the Court of Appeals affirmed the trial court's dismissal in an opinion designated for publication. Relying on its understanding of *Chandler v. Denton*, 741 P.2d 855 (Okla.1987), the appellate court held that the time period allowed by Section 100 began when the federal district judge dismissed the action, rather than when the United States Supreme Court denied certiorari. We granted certiorari on May 4, 1992, and now reverse and remand for further proceedings. We also dismiss the appeal as to defendant USX.

■ First, let it be understood that no defendant urges that the one-year savings period began to run with the September 29, 1986 voluntary dismissal of the first case filed in state court. Whether this is because no defendant named in that first suit believed that limitations had run as to it prior to dismissal, or because of some other reason, that first state court dismissal is of no consequence here. Our interpretation of Section 100 has been, and is, that it affords one and only one refiling if a case is dismissed after limitations has run. *U.S. v. Swyden*, 175 Okl. 475, 53 P.2d 284, 288 (Okla.1936). This opinion answers only the questions briefed, foremost of which is whether the one-year period starts with dismissal of the federal suit at the trial level or with the finality of the federal appeal.

Also, we take note that neither party asserts that Section 100 is inapplicable due to the fact that the dismissed case was filed in *federal* court. In *Edmison v. Crutsinger,* 165 Okl. 252, 25 P.2d 1103 (1933) we held that Section 100 applies to extend the limitations period regardless whether the dismissed suit was filed in state court or federal court sitting within the state of Oklahoma. *See also Smith v. Ogle,* 196 Okl. 295, 164 P.2d 992 (1945).

## I. THE COMMENCEMENT OF THE LIMITATION PERIOD OF SECTION 100

■ Title 12 O.S.1991, § 100 provides: "if any action is commenced within due time and the judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff ... may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed."

The statute has been termed a savings statute as it permits the filing of an action after the statute of limitations has run. *See Ross v. Kelsey Hayes, Inc.,* 825 P.2d 1273, 1277 (Okla.1991). It acts to extend the statutorily-established limitations period. *Id.*

■ Grider urges that his October 12, 1989 refiling was well within the one-year period allowed by Section 100. He claims that the one-year period did not begin to run until the judgment became final, and that it did not become final until the United States Supreme Court denied certiorari on October 2, 1989. The defendants, on the other hand, urge that the time period began when the federal District Court dismissed the state claims on April 2, 1987. In connection with that argument the defendants claim that Grider only appealed the federal court ruling as to the RICO and antitrust claims. They urge that he did not appeal the federal court's dismissal of the state claims of fraud and embezzlement.

Both Plaintiff and Defendants claim that *Chandler v. Denton,* 741 P.2d 855 (Okla.1987) supports their position. In *Chandler,* we were called upon to decide whether the savings provision operated to protect a cause of action which was based on multiple theories of liability, some of which were barred before the original petition was filed. That action was first asserted as a *counterclaim,* which was ordered dismissed by the trial judge. The aggrieved defendant filed a "motion to reconsider". One of the questions was whether the one year commenced on the date of the original order of dismissal, or on the date the motion to reconsider was denied. We held that the one-year period commenced with the date the order of dismissal became *final,* rather than with the original order. *Id.* at 860, 863. Defendants here argue that an appeal in the first *Chandler* case indicated that we had held that an appeal does not delay commencement of the running of the one year. Such was not the *Chandler* holding, however. In *Chandler* we were not called upon to decide if an appeal could delay the running of the one-year period.

This "finality" requirement has recently been discussed by the Tenth Circuit Court of Appeals in *Twashakarris, Inc., v. Immigration and Naturalization Serv.,* 890 F.2d 236 (10th Cir.1989). Plaintiffs' first lawsuit in the Western District of Oklahoma was dismissed by the Court without prejudice. Rather than filing a new complaint plaintiffs appealed the dismissal. The dismissal was affirmed on appeal in March, 1986, and the plaintiffs refiled their complaint in February, 1987. The U.S. District Court dismissed this second complaint, stating that the statute of limitations had run.

The Tenth Circuit looked to the language of our Section 100. It observed that Section 100 provides two situations where an additional year to file is permitted: (1) in the instance of reversal of a judgment for the plaintiff and (2) if the plaintiff fails in an action otherwise than on the merits.

Although the questioned action fell into the second category, the court found the wording of the first useful in deciding whether the limitations period began after the completion of an appeal:

> The key to understanding this phrase is the word "action." We hold that an "action" includes the initial judgment and any validly filed appeals that suspend the finality of the judgment. Thus, if a plaintiff's case were dismissed otherwise than on the merits and the plaintiff filed a timely appeal or a timely motion that tolled the time required for appeal, the plaintiff would be given an additional year from the time the appeal or motion was adjudicated in which to refile a complaint. Under these circumstances, the "action" would continue until the appeal was resolved. This interpretation complements the first clause of the statute which does not take effect until after an appeal. *Id.* at 237.

Thus the Tenth Circuit held that, for Section 100 purposes, a validly-filed appeal would toll the limitations period until the appeal was resolved and the judgment became final.

■ While the definition of "final" has taken on different meanings in different contexts,[1] we have consistently held to the rule that a final adjudication is either one in which no appeal has been taken and the time for appeal has run or one in which an appeal has been filed and acted upon by the appellate court. *See State ex rel. Derryberry v. Kerr–McGee Corp.,* 516 P.2d 813, 820 (Okla.1973); *Benham v. Plotner,* 795 P.2d 510, 512 (Okla.1990); *Oklahoma Bar Ass'n v. Hornung,* 813 P.2d 1041, 1042 (Okla.1991) (discipline is permitted for a felony conviction which has become final by failure to appeal or determination of appeal); *Depuy v. Hoeme,* 775 P.2d 1339, 1343 n. 23 (Okla.1989) (a judgment has *res judicata* effect after the expiration of ap-

peal time when no appeal has been taken). In *Mabee Oil & Gas Co. v. Price,* 198 Okl. 510, 179 P.2d 916, 918 (1947), we held that lodging an appeal in the Supreme Court does not constitute a new action or an original proceeding, but is simply the continuation of the suit commenced in the trial court.

Our Section 100 tracks an identical statute from Kansas, originally General Statutes of Kansas, 1889, Paragraph 4100. The Kansas Supreme Court in *New v. Smith,* 86 Kan. 1, 119 P. 380 (1911)[2] answered this exact question. It rejected the argument that the one year commenced with the lower court's ruling, stating:

> "The appellee's contention would compel a party who deems himself prejudiced by such an order to forego his right of appeal, as frequently, perhaps generally, he cannot get a hearing thereon in the Supreme Court and commence a new action within one year. To commence a new action in the same court without an appeal is virtually to submit to what he regards as an illegal order. This is not the intent of the Code ... We hold that the trustee had one year after the filing of the decision in the Supreme Court within which to commence a new action."

An overwhelming majority of jurisdictions agree with Kansas and the Tenth Circuit that the time of commencement of the savings provisions is the date the judgment is decided on appeal, not the date of determination in the trial court. *See Whetsel v. Gosnell,* 56 Del. 248, 193 A.2d 200 (1963); *Dinerman v. Sutton,* 45 Misc.2d 791, 258 N.Y.S.2d 13 (1965); *Young v. Garrett,* 212 Ark. 693, 208 S.W.2d 189 (1948), *cert. denied,* 335 U.S. 814, 69 S.Ct. 31, 93 L.Ed. 369 (1948).[3] In general, these jurisdictions agree that a plaintiff should not be forced to choose between an appeal and a

---

1. For example, we say that an order is "final" when it "determines the action and prevents a judgment", 12 O.S.1981 § 953, meaning that it is ripe for appeal. Such an order is not "final," however, for *res judicata* purposes, if a timely appeal of its correctness still pends. *Depuy,* 775 P.2d at 1343; *Kerr–McGee,* 516 P.2d at 820.

2. *New v. Smith* was disapproved, but only as to certain other issues, in *Campbell v. Dick,* 71 Okl. 186, 176 P. 520, 522 (1918).

3. For a more extensive list of the jurisdictions which hold similarly, see 79 A.L.R.2d 1270, 1276–1281 (1961).

refiling of the claim to preserve rights given under a savings statute. *Id.*

■ Because we have held in *Chandler* that the date of finality of the order of dismissal is the determinative date, and because a judgment is not final, in this context, until the opportunity for appeal has passed or the appeal has been acted upon, we agree that the operative date here is that of the U.S. Supreme Court's denial of certiorari. Thus, Section 100's one-year saving period did not begin to run until certiorari was denied on October 2, 1989. Until the appeal process ended the proceeding was a continuation of the "action" commenced in the trial court. *Mabee*, 179 P.2d at 918; *Twashakarris*, 890 F.2d at 237. Any other decision could result in a waste of judicial time and resources, because a decision on appeal could negate any need for the refiling of a claim. Requiring the filing of a suit in District Court to proceed simultaneously with an appeal on the same issue would not be judicially efficient. Consistent with our prior case law and following that of a majority of our sister jurisdictions, we hold that the critical date is that date on which the appeal process is final. Grider's action was timely filed within this one-year period.

## II. ABANDONMENT OF STATE CLAIMS ON APPEAL

■ The next issue presented is whether Grider abandoned his state claims by failing to raise them in the federal appeals. The Defendants urge that even if the savings period starts from the finality of the appeal as to issues decided in the appeal, Grider did not appeal the federal district court's dismissal of the pendent state claims, and thus Grider was required to proceed by refiling these claims within one-year of the date of the federal district court's dismissal. Grider insists that he did not abandon these appeals, and in fact raised the issues on appeal to the Tenth Circuit. The Tenth Circuit, in its opinion, recognized the presence of pendent state claims but did not address the correctness of the dismissal of those claims in light of the decision it reached.

The briefs of the parties in the Tenth Circuit appeal are not before this Court. Other than the Tenth Circuit opinion, there is nothing else in the record to indicate whether the state claims were abandoned. However, the Tenth Circuit opinion makes it clear that the state claims were dismissed only because the federal claims were dismissed and the federal court declined to retain jurisdiction over the pendent state claims. The Tenth Circuit specifically stated that Grider did not intend to waive any state claims, should the RICO claims be reinstated, but rather intended to pursue them under principles of pendent jurisdiction.

The parties have not argued that the pendent state issues were separate causes of action rather than alternative theories of recovery. The record indicates that the same operative events which allegedly occurred from 1982 to 1985 gave rise to the RICO theory and the antitrust theory as well as the state-law based theories of fraud and embezzlement. Grider's entire cause of action was based on the series of transactions in which he was allegedly deprived of proceeds from oil operations. Based on this and the Tenth Circuit opinion, we conclude that Grider did not abandon his right to pursue the state claims.

## III. DOG, DWS AND BREWER'S DEFENSE OF STATUTE OF LIMITATIONS

Appellees DOG, DWS and Brewer assert that the action filed against them was time-barred. They assert that regardless of whether this Court applies the two-year limitation period for fraud or the three-year limitation period for "money had and received", the action was barred because it was brought more than three years after the operative events. Hence, they argue that because the original claim was time-barred, it cannot now be saved by Section 100.

DOG, DWS and Brewer were not named as parties until the action was filed in federal court in 1986. The complaint filed in federal court alleged that DOG fraudulent-

ly refused to remit revenues to Grider during 1982 and 1983, that DOG charged excessive rates in 1984 and 1985, and that DOG was involved in a conspiracy with DWS and Brewer to charge excessive rates. The federal court dismissed the federal claims for failure to state a claim and also dismissed the state claims. The federal court did not reach the question of whether these state claims were barred by the statute of limitations.

DOG, DWS and Brewer assert that they were not named as parties to the original action filed in state court, and that because the federal action was filed in 1986 after the limitations period had run, these particular theories of recovery are now time-barred. Grider does not directly address this argument, but instead focuses on the question of Section 100's commencement. The state trial court did not address this question either, but dismissed, holding that the operative date for starting the Section 100 one year was the date of the federal district court's dismissal.

■■■■ We agree that if the original claim was time-barred, it cannot be "saved" by Section 100. *Chandler*, 741 P.2d at 863; *Brown v. Hartshorne Public School Dist.*, 926 F.2d 959, 962 (10th Cir.1991). A claim based on fraud must be brought within two years of the discovery of the fraudulent acts. 12 O.S.1991 § 95 (Third); *Richey v. Westinghouse Credit Corp.*, 667 F.Supp. 752 (W.D.Okla.1986). Whether plaintiff Grider brought his 1986 federal action within that period, or within the three year period to recover "money had and received," under Section 95 (Second),[4] is a factual matter to be determined by the trial court on remand. Under *Chandler*, only those theories of recovery arising from operative events which were not time-barred when filed on September 29, 1986 will survive a defense of limitations. *Id.* at 863–64.

---

4. *See Liberty Nat'l Bank of Weatherford v. Lewis,* 172 Okl. 103, 44 P.2d 127 (1935).

5. In 1991 12 O.S.1991 § 1006 was enacted to permit an appeal from a judgment which resolves one or more of the claims against one or more of the parties if that judgment expressly

## IV. MATURITY OF APPEAL AS TO TOG, TXO AND USX

■■■■ TOG, TXO and USX urge that the Grider's appeal was filed prematurely. The trial court announced his decision to TXO and TOG in a letter on January 17, 1990. This letter did not include anything regarding USX. Later, on March 6, 1990, the trial court issued an order with regard to TOG and TXO, incorporating the January letter. He also, at that time, issued an order sustaining USX's motion to dismiss, in which no reference was made to the January letter. Clearly no decision as to USX was made until March 6, 1990. Grider had filed his petition-in-error on February 15, 1990, and thus before any adjudication as to USX. The Court of Appeals held that the appeal was premature as to USX.

In *Oklahomans for Life, Inc. v. State Fair*, 634 P.2d 704, 706 (Okla.1981), we held that when an entire cause of action is resolved against one of several parties, that resolution is final and appealable. We held that failure to appeal from such a summary judgment would result in a final judgment in favor of the moving party. *Id.*[5] *Oklahomans for Life* supports the Court of Appeals' ruling that the petition-in-error was timely filed with regard to all defendants but USX. All issues raised against the other defendants were resolved by the trial court's letter of January 17. The petition-in-error was filed after this decisional letter, but within the time prescribed. We agree with the Court of Appeals' ruling on this question. The only claim remaining was that against USX. No judgment was rendered as to USX until March 6. The March 6th order does not refer to or incorporate the prior decision rendered in the earlier letter. The petition-in-error was premature as to USX because no judgment had been rendered as to USX. The appeal must be dismissed as to that defendant. *See State ex rel. Trimble v.*

states that there is no just reason for delay. However, this statute was not in effect at the time of the trial court's ruling. Section 1006 now renders inoperative that portion of *Oklahomans For Life, supra,* referred to herein.

*City of Moore,* 818 P.2d 889, 895 (Okla.1991).

■ We disagree with the assertion of TXO and TOG that the petition-in-error was also premature as to them. They make the argument that plaintiff's appeal was premature because it was filed prior to the order of March 6 which memorialized the trial court's decision of January 17. However, this Court has consistently held that under the statutes in effect until January 1, 1991, the time period for filing a petition-in-error began to run when the court *pronounced* its decision. *Miller v. Miller,* 664 P.2d 1032, 1034 (Okla.1983). "A judgment or order begins its legal life as soon as it is pronounced from the bench and before it is ever reduced to writing for entry of record by the clerk." *Depuy,* 775 P.2d at 1343.[6] Here, the decision was rendered on January 17, and the trial court merely directed the memorialization of the judgment to be written by the parties. The appeal was timely as to TOG and TXO.

## CONCLUSION

The operative date to trigger the one-year savings provision of Section 100 is the date the judgment of dismissal became final. Thus the one-year period began to run on the date that the U.S. Supreme Court denied certiorari and brought finality to the action. The re-filing in state court was timely insofar as Section 100 is concerned.

Whether the filing in federal court on September 29, 1986 was timely under applicable statutes of limitations as to certain defendants is not factually ascertainable on the record before us and has not been ruled on by the trial court. On remand the District Court will make this determination.

As to the timeliness of plaintiffs' appeal, the arguments of TXO and TOG are rejected. The appeal as to them was brought to this court in a timely fashion. The appeal as to USX, however, must be and is hereby ordered dismissed. It was brought prematurely and gave this Court no jurisdiction to disturb the judgment in favor of USX.

The Court of Appeal's opinion is vacated. The District Court's order of dismissal is reversed as to all defendants over which this Court has appellate jurisdiction. The matter is remanded to the District Court for further proceedings consistent with our decision here.

SIMMS, HARGRAVE, KAUGER and WATT, JJ., concur.

OPALA, J., concurs in result.

LAVENDER, V.C.J., concurs in parts 1, 3, and 4; concurs in result as to 2.

HODGES, C.J., concurs in parts 1, 3, and 4; dissents from 2.

OPALA, Justice, concurring in result.

The United States District Court for the Western District of Oklahoma dismissed plaintiff's [Grider's] RICO[1] and federal anti-trust[2] counts[3] *and* his pendent[4] state-law claims.[5] *Grider appealed to the United States Court of Appeals for the Tenth Circuit solely from the RICO claims' dismissal.*[6] He later sought certiorari from

---

6. The current statute, which was not in effect for the purposes of this case, 12 O.S.1991 § 990A, starts the time for appeal with "the date the final order or judgment is *filed.*" (emphasis added)

1. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1982) [RICO].

2. The Sherman Antitrust Act, 15 U.S.C. § 1 et seq. (1982).

3. The federal trial court dismissed Grider's *federal counts* for *failure to state a claim.* Fed. R.Civ.P. 12(b)(6).

4. For the explanation of "pendent" claims, *see infra* Part I.

5. The federal trial court dismissed Grider's pendent claims for "lack of jurisdiction." These claims included, *inter alia,* violation of state antitrust law, breach of contract, breach of fiduciary duty, fraud and conversion.

6. According to the opinion of the United States Court of Appeals for the Tenth Circuit, "Grider [whose sole challenge was to the RICO claims' dismissal] does not contend on appeal that the court erred in dismissing the antitrust claims, *nor does he argue that the court abused its discretion in dismissing the pendent claims.*" [Emphasis supplied.] *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147, 1148 n. 1 (10th Cir.1989), cert. denied 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989).

the U.S. Supreme Court. Unsuccessful in his federal reviews, he refiled his state-law claims within one year of certiorari's denial. The court holds *broadly* today that timely-filed pendent jurisdiction claims, dismissed on grounds other than the merits by a federal court sitting in Oklahoma, may be refiled in a state court within one year[7] from the time "federal reviews"[8] of the U.S. district court's dismissal have been exhausted.

I write separately to counsel that the pendency of federal reviews should not extend the one-year limit for refiling the dismissed claims in a state court *unless the pendent claims' dismissal had been urged as error on reviews,* or unless the plaintiff makes a convincing record-supported showing that *mid-appeal dichotomizing of his complaint into separate federal- and state-law claims (by pressing the latter in a state court) would have harmed the prosecution of federal litigation.*[9] Because the course I would take is more restrictive than that charted by the court, and the rule I would announce is new to

our jurisprudence, I would give *purely prospective* application to the procedural innovation I propose to engraft for the court's adoption.[10] I hence concur *only in the result* the court reaches today. *Under the procedural standards I espouse, a plaintiff's state-law claims should be regarded as having failed otherwise than on the merits when they are dismissed by the federal district court. Were it not for the purely prospective application of the rule I counsel, I would hold, on this record, that the one-year limit of § 100 was triggered by the U.S. district court dismissal.*

I

THE PRE–STATUTORY DOCTRINE OF "PENDENT" JURISDICTION GOVERNS THE FEDERAL COURT'S DISMISSAL OF GRIDER'S STATE–LAW CLAIMS

A *case-law doctrine* known as "pendent" jurisdiction,[11] which was later carried into

7. 12 O.S.1981 § 100. Section 100's savings provision is available *only* to those pendent claims that had *become barred during an action's pendency. Birmingham Fire Ins. Co. v. Bond,* Okl., 301 P.2d 361, 363 (1956). The pertinent terms of § 100 are:
"If any action is *commenced within due time,* and a judgment thereon for the plaintiff is reversed, or *if the plaintiff fail in such action otherwise than upon the merits,* the plaintiff ... may *commence a new action within one (1) year after the reversal or failure* although the time limit for commencing the action shall have *expired before the new action is filed."* [Emphasis supplied.]
*Edmison v. Crutsinger,* 165 Okl. 252, 25 P.2d 1103, 1109 (1933); *Smith v. Ogle,* 196 Okl. 295, 164 P.2d 992, 995 (1946). *But see Morris v. Wise,* Okl., 293 P.2d 547, 550 (1956), a case that relies on *Herron v. Miller,* 96 Okl. 59, 220 P. 36 (1923). *Morris* holds § 100 *uninvocable* to save an action which was originally brought in a *federal district court in Texas* and was later recommenced in an Oklahoma state court. The teaching of *Morris* came under *severe criticism* in *Bockweg v. Anderson,* 328 N.C. 436, 402 S.E.2d 627, 633 (1991), reh'g denied 329 N.C. 277, 406 S.E.2d 599 (1991), for affording out-of-state federal-court dismissals dehors the merits a different treatment from that which is accorded in-state federal-court dismissals.

8. "Federal reviews" include both appeal and certiorari process.

9. It is the duty of the *appealing party* to procure a record that is *sufficient to obtain the corrective relief sought. Chamberlin, infra* note 23 at 724. Plaintiff has the burden to show that § 100 tolled the time bar of limitations. *Owens v. Clark,* 154 Okl. 108, 6 P.2d 755, 758 (1932).

10. *Poafpybitty v. Skelly Oil Company,* Okl., 394 P.2d 515, 520 (1964). *See Hale v. Bd. of Cty. Com'rs. of Seminole Cty.,* Okl., 603 P.2d 761, 764 (1979); *Isbell v. State Etc.,* Okl., 603 P.2d 758, 760 (1979) (Opala, J., concurring). For recent examples of *purely prospective* application given new rules of appellate practice, which are divined from obscurely articulated statutes, *see Jaco Production Company v. Luca,* Okl., 823 P.2d 364, 364–365 (1992), and *Heimbach v. Guiney,* Okl., 827 P.2d 170 (1992).

11. Pendent jurisdiction of federal courts over state-law claims, *even in the absence of diversity,* is rested on U.S. Const. art. III, § 2. Whenever a claim arises "under [the] Constitution, the Laws of the United States, and Treaties made ... under their Authority * * *" and the court can conclude from the relationship between that claim and the state-law claim that the entire action forms but one constitutional "case," a federal court may exercise its power to decide the claims together. *United Mineworkers v. Gibbs,* 383 U.S. 715, 723–724, 86 S.Ct. 1130, 1137–1138, 16 L.Ed.2d 218 (1966) (superseded by statute).

federal legislation,[12] governs Grider's inclusion of state-law claims in his federal action.[13] Federal trial courts *have discretion to hear state claims together with federal claims when both arise out of the same facts, if judicial efficiency, convenience and fairness would be served.*[14] *Federal courts routinely decline to exercise pendent jurisdiction when the underlying federal causes of action are dismissed before trial;*[15] *the state-law claims are then dismissed without prejudice and "left for resolution to state tribunals."*[16] This no doubt happened to Grider's pendent claims.[17]

The court's explanation for allowing Grider to delay bringing a state suit for one year beyond the end of federal reviews is *far too open-ended to be workable* as a sound rule of our jurisprudence. Although *pendent claims are often used as alternative grounds of recovery to federal claims,* they are not *ipso facto* incapable of *independent* prosecution in a state court.[18] Today's all-inclusive and undifferentiated protection for *every* dismissal *peripherally* placed in the pending federal judicial process *invites* plaintiffs *to postpone state-court refilings for the full length of federal reviews.* This is so because the court

---

**12.** 28 U.S.C. § 1367, eff. December 1, 1990. Its pertinent terms are:

"(a) ... in any civil action of which the district courts have original jurisdiction, *the district courts shall have supplemental jurisdiction* over *all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy* under Article III of the United States Constitution." [Emphasis supplied.]

**13.** *Grider's federal court complaint was filed Sept. 29, 1986. Congress' codification of pendent jurisdiction in 28 U.S.C. § 1367 applies to civil actions commenced on or after December 1, 1990. See supra* note 12.

**14.** *Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139.

**15.** *See* Wright, Miller, and Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3567.1, 133 (1984), citing the rule in *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139, for the statement that state-law claims should be dismissed if the underlying federal claims or questions are dismissed before trial. Later jurisprudence recognizes that this rule is *discretionary. See* Annotation, DISCRETIONARY EXERCISE OF PENDENT JURISDICTION OF FEDERAL COURT OVER STATE CLAIM WHEN JOINED WITH CLAIM ARISING UNDER LAWS, TREATIES, OR CONSTITUTION OF UNITED STATES, 76 ALR Fed 46 (1986).

**16.** *Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139. When Congress codified pendent jurisdiction, it enacted a federal "savings" clause. The pertinent terms of 28 U.S.C. § 1367(d) (1990) are:

"The period of limitations for any claim asserted under subsection (a)['s] [supplemental jurisdiction] ... shall be tolled while the claim is pending and for a period of 30 days *after it is dismissed unless state law provides a longer tolling period.*" [Emphasis supplied.]

*A commentator upon § 1367(d) strongly suggests that litigants measure its savings time from the district court dismissal and not from the end of federal reviews. See* D. Siegel, PRACTICE COM-

MENTARY, 28 U.S.C. § 1367 (1990) at p. 236, which states in pertinent part:

"The dismissal moment [for purposes of § 1367(d) ] should be taken to be the moment of dismissal in the district court. *Even if an appeal is taken to a court of appeals from the district court dismissal, the party whose claim has been dismissed under § 1367 does best to commence the state action within the prescribed time measured from the district court dismissal, and not from some later appellate affirmance of it.* Perhaps, after commencing the state court action in such a situation, the plaintiff can ask the state court to stay the action—now timely commenced and pending—while the federal appeal proceeds. *This seems to be the safest course until there is a definitive federal ruling about whether the 30–day period may be measured from an appellate determination. The matter is not addressed by § 1367(d) and anything connected with the statute of limitations must be handled conservatively....*" [Emphasis supplied.]

*Under § 100, a time-barred claim that is dismissed otherwise than upon the merits may not be refiled more than once.* U.S. Fire Ins. Co. v. Swyden, 175 Okl. 475, 53 P.2d 284, 288 (1936).

**17.** The 1990 codification of pendent jurisdiction in § 1367 leaves undisturbed the federal trial courts' discretion to dismiss pendent claims if it *"has dismissed all claims over which it has original jurisdiction."* 28 U.S.C. § 1367(c)(3) (1990).

**18.** Where the federal trial-court dismissal of pendent claims is not challenged in federal reviews, allowing § 100 to extend the time bar past the very end of the review process would be *entirely inappropriate* if the federal court had declined to exercise pendent jurisdiction because (1) the *state-law claims substantially predominate over federal claims* either in terms of proof, of the range of issues raised or of the comprehensiveness of the remedy sought, (2) state claims *tender issues of unsettled state-law dimensions* or (3) trying the federal and state claims together would tend *to confuse the jury.*

makes *no* exception for reviews utterly *unrelated* to pendent claims' dismissal, nor for those instances where it is clear that an *independent,* mid-appeal state suit's commencement *would not harm* the plaintiff's prosecution of federal claims.[19]

## II

## THE SAVINGS PERIOD PROVIDED IN § 100 FOR RECOMMENCEMENT OF STATE–LAW CLAIMS THAT FAIL DEHORS THE MERITS IS *ORDINARILY* TRIGGERED BY THEIR FEDERAL TRIAL–COURT DISMISSAL, WHICH FREES THEM FOR RESOLUTION BY A STATE TRIBUNAL

Although limitation periods are statutory, common law governs their *construction.*[20] *Our jurisprudence teaches that limitations begin to run when the plaintiff could first bring the action.*[21] *Since pendent claims may be brought in a state court the moment a federal trial court refuses to exercise jurisdiction over them, the savings statute's time limit must ordinarily be counted from the claims' dismissal. Only if* the record demonstrates that error in the pendent claims' dismissal was urged in the federal reviews, or that

the plaintiff's immediate commencement of a state action might have harmed the federal litigation[22] should the state-law claims be deemed to have failed later than at their dismissal by the federal trial judge.

## III

## ASSESSMENT OF THE RECORD IN THIS CAUSE

The record before us is *incomplete;* the parties incorporated for our guidance *neither* the federal district court's judgment roll *nor* the briefs submitted at various stages of federal reviews.[23] I would conclude, on this record's assessment, that (1) the state-law claims' dismissal was not urged as error in the federal reviews[24] and (2) neither the record nor the briefs before us shed any light on the *critical issue* of whether a mid-appeal refiling of the state claims in a state court would have hobbled Grider's posture in his federal litigation.[25] *In short, the record plaintiff tenders for our review reveals no more than that the refiled state-law claims failed otherwise than on the merits when they were dismissed in the federal trial court.* Were it not for a total absence of extant authority on the controlling issue before us today,[26] I

---

**19.** An *open-ended extension* of § 100's one-year limit *past* the full length of federal reviews is *the inevitable consequence of today's pronouncement which puts a premium on delay.*

**20.** *Reynolds v. Porter,* Okl., 760 P.2d 816, 819 n. 6 (1988); *Lake v. Lietch,* Okl., 550 P.2d 935, 937 (1976). *See Pryse Monument Co. v. District Court Etc.,* Okl., 595 P.2d 435, 438 n. 14 (1979).

**21.** *MBA Commercial Const. v. Roy J. Hannaford,* Okl., 818 P.2d 469, 473 (1991).

**22.** *State-court recommencement of pendent claims during federal reviews might be prejudicial to the prosecution of federal claims* if, for example, the state-law claim is so *closely tied to questions of federal policy* that another pending action would make the federal litigation dismissible, or if the federal reviews were to include questions of *federal pre-emption* of state-law claims.

**23.** Although Grider *tried to supplement the record on this appeal* by incorporation of materials from the federal-court litigation which were not timely tendered below, *his attempt to cure the deficient record came too late. Material that*

*was not before the trial court at the time of its adjudication may not be considered on appeal. Chamberlin v. Chamberlin,* Okl., 720 P.2d 721, 723 (1986); *Frey v. Independence Fire and Casualty Co.,* Okl., 698 P.2d 17, 20 (1985); *Eckel v. Adair,* Okl., 698 P.2d 921, 925 (1985).

**24.** *See supra* note 6.

**25.** While Grider argues that *judicial economy* strongly favored keeping the federal- and state-law claims together until federal reviews stood completed, he *neither suggests nor offers to* demonstrate that their separation would have harmed his federal litigation.

**26.** The text of § 100 gives us no clear *guidance* as to when its savings period begins to run in those instances where another forum's dismissal dehors the merits is challenged on review. Extant jurisprudence of this court and that from other states fails to provide a definitive solution. Purely prospective application should hence be given the rule I counsel the court to adopt today. *See Poafpybitty* and its progeny, *supra* note 10.

would conclude that Grider's action was time-barred when he commenced it below more than one year after the federal district court's dismissal of his pendent claims.

## SUMMARY

In sum, *I would pronounce today that the § 100 savings period may be triggered by the end of federal reviews either when (1) the pendent claims' dismissal is challenged as error both on appeal and on certiorari, or (2) if error in that dismissal is not urged in federal reviews, when a convincing record-supported showing is made that a mid-appeal commencement of a state-court action would have adversely affected the prosecution of federal claims. Because the course I would chart for Oklahoma jurisprudence today is new to the body of our decisional law, I would give the pronouncement a purely prospective application from the date mandate issues herein.*[27]

27. *Poafpybitty,* and its progeny, *supra* note 10.